**Russell DAVES, Appellant,**

v.

**COMMISSION for LAWYER DISCIPLINE, Appellee.**

No. 07–96–0093–CV.

Court of Appeals of Texas, Amarillo.

Aug. 14, 1997.

Rehearing Overruled Sept. 15, 1997.

**21.** *See id.*

Carr, Fouts, Hunt & Wolfe, L.L.P. (Donald M. Hunt and Gary M. Bellair) Lubbock, for appellant.

State Bar Of Texas (Linda A. Acevedo) Austin, McClesky, Harringe, Brazil & Grat (Jim Hund, Special Assistant Disciplinary Counsel) Lubbock, for appellee.

Before BOYD, C.J., and DODSON and QUINN, JJ.

DODSON, Justice.

The Commission for Lawyer Discipline (the Commission) brought disciplinary proceedings against Russell Daves (Daves), alleging that his conduct in representing K.D. and B.D. (the Parents) and their minor child (the Child), violated the Texas Disciplinary Rules of Professional Conduct. The Parents and the Child had conflicting claims to a settlement arising out of injuries suffered by the Child while at a psychiatric hospital (the Hospital). After the presentation of evidence, a jury found that Daves was guilty of violating Disciplinary Rules 1.06(b)(1), 1.06(b)(2), 1.07, and 3.02.[1] Based upon these findings, the trial court rendered judgment against Daves, suspended him from the practice of law for nine months, and assessed attorneys' fees against him. By sixteen points of error, Daves appeals the trial court's judgment and imposition of sanctions. We affirm.

The Child was being treated in the Hospital in late 1990 for behavioral problems. In early February, 1991, the Parents learned that the Child had been sodomized by a Hospital employee. Soon thereafter, the Parents learned that the person who had sodomized the Child was infected with the AIDS virus. Faced with the prospect of spiraling medical bills, the Parents hired attorney Jay Harvey (Harvey) to represent them against the Hospital and its employee. In July, 1992, the Parents reached a tentative settlement of $1.5 million with the Hospital.

The Parents then learned that the settlement was limited to compensation for the Child, and they became concerned for the recovery on their own claims. After experiencing difficulty with Harvey and becoming disgruntled with his services, the Parents

---

1. Tex. Gov't Code Ann. tit. 2, subtit. G app. (Vernon Supp.1997) (State Bar Rules, article X, § 9). Unless otherwise noted, these Rules will be referred to herein as "Rule" or "the Rules."

sent a letter to him requesting the termination of his services. Meanwhile, Harvey filed a friendly suit in the 237th District Court of Lubbock County, Texas, seeking court approval of the settlement, and requested that attorney Bruce Magness serve as guardian ad litem for the Child.

The Parents hired Daves to have themselves appointed as the Child's co-guardians. Daves filed an application to appoint the Parents as co-guardians of the Child, which was granted by the County Court of Lubbock County, Texas (hereinafter referred to as the "guardianship case"). An attorney ad litem was appointed by the court for the Child. Soon thereafter, the Parents applied to the court for and received permission to institute an action on behalf of the Child for the injuries sustained by him while at the Hospital. The Parents also received permission from the Court to hire Daves as attorney to pursue the claims of the Child.

Daves then filed an application in the guardianship case requesting permission for the Parents, as co-guardians, to settle "any and all claims of [the Child]" against the Hospital and its employee. Specifically, they requested authority to settle the Child's claim for $1 million, $500,000 less than the original $1.5 million settlement negotiated by Harvey. Further, the Parents made an offer to the Hospital to settle their claims for $500,000. No settlement was reached.

Daves additionally filed a petition in the 166th District Court of Bexar County, Texas, on behalf of "[the Parents], Individually and as Co–Guardians of the Person and Estate of [the Child], a minor, Plaintiffs," naming the Hospital's employee as the defendant (hereafter referred to as the "Bexar County case"). An attorney ad litem was appointed for the Child. After the unsuccessful negotiations with the Hospital, Daves amended the petition in the Bexar County case to include the Hospital as a defendant.

In November of 1992, a grievance complaint was filed against Daves by Harvey and Magness with the State Bar of Texas. Various interventions, claims, and counterclaims were filed by the parties in the grievance proceedings. By January, 1993, the parties executed a memorandum of agreement which proposed settlement of all pending matters for $1.5 million, division of which was to be agreed upon by the parties with the approval of the court. Further, the parties conceded that if they were unable to reach an agreement regarding the division of the $1.5 million, they would submit the division to the Honorable William Shaver, District Court Judge of Lubbock County, Texas. As part of the agreement, Daves agreed not to seek attorney's fees from the $1.5 million. The parties were not able to reach an agreement as to the division of the monies, and Judge Shaver eventually divided the funds equally between the Child, the Parents, and Harvey's law firm.

In September 1993, the Commission filed a disciplinary petition against Daves, alleging his conflict of interest in the representation of the Parents and the Child. By the court's charge, the jury was asked whether Daves had committed acts which were violative of Rules 1.06 and 1.07 (conflict of interest provisions) and Rule 3.02 (minimizing the burdens and delays of litigation provision) of the Texas Disciplinary Rules of Professional Conduct. The jury affirmatively answered all of these questions. The trial court rendered judgment on the jury's findings, and imposed a sanction on Daves which included a nine month suspension from the practice of law and payment of attorneys' fees for the Commission.

Daves asserts sixteen points of error on appeal. In the interest of clarity, we will group and discuss these points according to subject matter. By points of error one, five, and nine, Daves contends that the trial court erred in rendering judgment on the jury's verdict because he could not have violated Texas Disciplinary Rules of Professional Conduct 1.06(b)(1), 1.06(b)(2), and 1.07 as a matter of law. We disagree.

■ Daves first asserts that, as a matter of law, he did not violate the Disciplinary Rules proscribing representation of clients with conflicting interests because under comment 12 to Rule 1.02 he could have no attorney-client relationship with the Child because he was not court-appointed. Comment 12 to Rule 1.02 states that, "Unless a lawyer is

legally authorized to act for a person under a disability, an attorney-client relationship does not exist *for the purpose of this rule.*" (emphasis added). Accordingly, only for the purposes of an alleged violation of Rule 1.02 must a lawyer be court-appointed to represent a person under a disability. Daves was not alleged to have violated Rule 1.02, and therefore comment 12 does not apply in this case.

■ Notwithstanding Rule 1.02, then, the actions of Daves and the Parents clearly shows that Daves was acting as counsel for the Child. The attorney-client relationship may be implied if the parties by their conduct manifest an intent to create such a relationship. *Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 265 (Tex.App.—Corpus Christi 1991, writ denied); *Parker v. Carnahan,* 772 S.W.2d 151, 156 (Tex.App.—Texarkana 1989, writ denied); *Duval County Ranch Co. v. Alamo Lumber Co.,* 663 S.W.2d 627, 633 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). In this connection, the record reveals that: Daves took action to assert the claims of the Child in the Bexar County lawsuit, and also negotiated the settlement of the Child's claims with the Hospital; the Parents entered into a legal services agreement on behalf of the Child for Daves to represent the Child; and, Daves and the Parents represented to the County Court of Lubbock County in their "Application to Settle the Claims of [the Child]" that Daves was the "court approved attorney for *the person and estate of [the Child]* " (emphasis added). It is evident that the Parents and Daves intended by their actions that Daves represent the Child. Accordingly, we conclude that the attorney-client relationship was established between Daves and the Child.

■ Assuming, *arguendo,* that Rule 1.02 does apply in this case, we nonetheless conclude that the attorney-client relationship was established between Daves and the Child. As stated above, the Parents became the court-appointed co-guardians of the person and estate of the Child. *See,* Tex. Prob. Code Ann. §§ 601(10), 676, 690, 693 (Vernon Supp.1997). As co-guardians of the Child, they had the duty to bring suits on behalf of and defend suits brought against the Child.

Tex. Prob.Code Ann. §§ 769, 768 (Vernon Supp.1997). In order to bring a suit on behalf of the Child, it was necessary to employ an attorney to assert the claims of the Child. The Parents, as co-guardians, employed Daves for precisely this purpose, entering into a "Legal Services Agreement" for Daves to represent "the estate of [the Child]." The Court approved this employment of Daves. Daves was therefore authorized by the court to act on behalf of the Child. Accordingly, Daves had a duty not only to the Parents as co-guardians, but also to the Child whose claims he was asserting, and the attorney-client relationship was established between the Child and Daves under comment 12 to Rule 1.02.

■ Daves also asserts in connection with these points of error that the appointment of the attorneys ad litem in the guardianship case and the Bexar County case properly protected the Child's interests, and therefore eliminated as a matter of law any conflict of interest. When a parent or guardian appointed to bring suit on behalf of a minor has an interest which is potentially adverse to the interests of the minor, the court must appoint an ad litem to protect the interests of the child. Tex.R. Civ. P. 173. Once that ad litem is appointed, he or she replaces the parent or court-appointed guardian as the representative of the minor. *Byrd v. Woodruff,* 891 S.W.2d 689, 705 (Tex.App.—Dallas 1994, writ denied). Based on this statement of the law, Daves reasons that "any appearance of conflict which existed by Daves' representation of the [Parents] at a time when their interest might have been adverse to that of their child disappeared" when the attorneys ad litem were appointed.

■ We disagree with Daves' reasoning. The record shows that even after the attorneys ad litem were appointed, Daves continued to attempt to re-negotiate the settlement that Harvey had already negotiated with the Hospital, both to the detriment of one client (the Child) and to the benefit of another client (the Parents). There is no evidence that any of the attorneys ad litem appointed on behalf of the Child were privy to or took part in the negotiations between Daves and

the representatives of the Hospital. No one was present in these negotiations to object to the detrimental treatment of the Child's interests in receiving $500,000 less than the original settlement negotiated by Harvey. The ad litem is required to participate in the case to the extent necessary to protect the ward. *Roark v. Mother Frances Hospital,* 862 S.W.2d 643, 647 (Tex.App.—Tyler 1993, writ denied). However, in this case the ad litems took no steps to protect the interests of the Child. Accordingly, we overrule points of error one, five and nine.

■ By points of error two, six, and ten, Daves asserts that the trial court erred in rendering judgment based on the jury's answers to Questions One, Two, and Three because the jury's answers are evidentiary and not ultimate, and therefore are immaterial and cannot support a judgment against Daves. The jury affirmatively answered three questions presented to them at trial, which read as follows:

*Question 1:* Did Russell Daves represent [the Parents] at a time where the representation of either or [sic] them involved a substantially related matter in which either of their interests was materially and directly adverse to the interest of [the Child]?

*Question 2:* Did Russell Daves represent [the Parents] where the representation of either of them reasonably appeared to be or became adversely limited by Russell Daves' responsibilities to [the Child]?

*Question 3:* Did Russell Daves act as an intermediary between the interests of [the Parents] and the interests of [the Child] with respect to their respective claims against Southwest Neuropsychiatric Institute and Lionel Bell?

In this connection, Daves filed with the trial court a motion for judgment non obstante veredicto and a motion to disregard jury findings, asserting that the jury findings based on these questions were evidentiary and not ultimate.

■ An issue is ultimate if it is essential to the right of action, and seeks a fact that would have a direct effect upon the judgment. *Clear Lake City Water Authority*

*v. Winograd,* 695 S.W.2d 632, 639 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). An evidentiary issue is an issue which the jury considers in deciding a controlling issue, but that is not a controlling issue itself. *Id.* An issue is immaterial if the issue is evidentiary and not ultimate, and the court may properly disregard such an issue as being immaterial to its decision. *Clear Lake City Water Authority v. Winograd,* 695 S.W.2d at 639; *Neuhaus v. Kain,* 557 S.W.2d 125, 135 (Tex.Civ.App.—Corpus Christi 1977, no writ). However, if the finding upon the issue which is claimed to be immaterial could affect the legal significance of the verdict and hence the judgment, the issue is material and must not be disregarded. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966).

A trial court must submit the questions to the jury which are raised by the pleadings and the evidence. Tex.R. Civ. P. 278. The Commission's live trial pleading alleged that Daves violated Rules 1.06(b) and 1.07, thereby raising the elements of these rules with the trial court. Questions Number One, Two, and Three track the language of Rules 1.06(b)(1), 1.06(b)(2), and 1.07. By doing this, the trial court submitted the elements of each rule to the jury, as it was required to do under Rule of Civil Procedure 278.

It goes without saying that each element of a cause of action is essential and material to the cause of action, and therefore is an ultimate issue. Consequently, we conclude that Questions One, Two, and Three presented ultimate issues to the jury, and the trial court did not err by denying Daves' motion to disregard the jury's findings on these issues. Accordingly, points of error two, six, and ten are overruled.

We note that Daves asserts that the only ultimate issue in this case is whether or not Daves represented the Child. However, this is not the only ultimate issue that was to be decided by the jury, as is evidenced by each Rule which contain multiple elements. As stated above, each of the elements of each cause of action which were included in the questions are material and essential to the cause of action. Accordingly, Daves' assertion is not well taken.

By points of error three, seven, and eleven, Daves asserts that the trial court erred in rendering judgment based on the jury's answers to Questions One, Two, and Three because there is no evidence, or alternatively, factually insufficient evidence to support the jury's affirmative answers to these questions.

When reviewing the judgment of the trial court under a "no evidence" standard, we consider only the evidence and inferences tending to support the jury's finding, and disregard all contrary evidence and inferences. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). If there is more than a "scintilla" of supporting evidence, we must affirm the judgment of the trial court. *Id.* at 928. When deciding whether the evidence is factually sufficient to support the trial court's judgment, we consider all of the evidence, and set aside the jury's finding only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

In light of our evidentiary discussion above, we do not find it necessary to perform a detailed discussion of the evidence once again. We conclude that, based on a review of the evidence in the record, there is more than a "scintilla" of evidence in the record to support the jury's answers to Questions One, Two, and Three. Further, we conclude that the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Consequently, we overrule points of error three, seven, and eleven.

By points of error four, eight, and twelve, Daves asserts that Questions One, Two, and Three impermissibly assume a disputed issue of fact, namely the issue of whether Daves actually represented the Child. Daves specifically and timely objected to all three of these questions on these grounds.

To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Texas Savs. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986). Alleged error will be deemed reversible only if, when viewed in the light of the totality of the circumstances, it amounted to such a denial of the rights of the complaining party that it was reasonably calculated and probably did cause the rendition of an improper judgment. *Id.* at 555.

When the charge is considered as a whole, the error, if any, complained of by Daves, is harmless. In the instructions that accompany each question, the trial court made clear to the jury that in order to answer each question affirmatively, they must conclude that Daves represented both the Parents and the Child. The instructions refer in several places to "common representation," "the representation of one client ... adversely affected by the lawyer's representation of ... the other client," "simultaneous representation," and "dual representation." These phrases instruct the jury that a common representation must be present to have a conflict of interest.

The instruction used in Question Three is illustrative of the way in which the trial court made the jury aware that they must find that Daves represented both the Parents and the Child to answer the question affirmatively. The instruction reads,

> You are instructed that a lawyer acts as an intermediary between clients *if the lawyer represents two or more parties with potentially conflicting interests.*
>
> A lawyer may act as an arbitrator or mediator between or among parties *who are not clients of the lawyer* even when the lawyer has been appointed with the concurrence of the parties. (emphasis added).

It is apparent that the trial court instructed the jury that if Daves represented both the Parents and the Child, then he could not act as an intermediary between them, but if he did not represent both sides, then his intermediary role was proper. Accordingly, we conclude that the omission complained of by Daves, viewed in the light of the totality of the circumstances, did not amount to such a denial of the rights of the complaining party, that it was reasonably calculated and proba-

bly did cause the rendition of an improper judgment.

■ Further, a court may assume facts which are conclusively established by the evidence presented. *Wiley v. Browning*, 670 S.W.2d 729, 733 (Tex.App.—Tyler 1984, no writ). As discussed above, the evidence in the record showed that Daves purported to represent the Child in the negotiations with the Hospital without participation from any of the appointed ad litems, that the legal services agreement entered into between Daves and the Parents as co-guardians was for the representation of the Child, and that the court approved of the Parents hiring Daves to represent the Child. This evidence is uncontradicted. Accordingly, we conclude that Daves' representation of the Child was established as a matter of law. Because of this and the fact that the alleged error in the charge was harmless, points of error four, eight, and twelve are overruled.

■ By points of error thirteen through fifteen, Daves contends that the trial court erred in rendering judgment on the jury's finding that he violated Rule 3.02 because he did not violate such rule as a matter of law. Daves also asserts that the trial court erred in rendering judgment on the jury's answer to Question Four because no evidence or factually insufficient evidence supports the finding and the instructions accompanying that question do not submit either the requisite elements or the standard of compliance. Alleged error is harmless when the jury's findings as to other issues are sufficient to support the judgment. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex. 1980); *see, Poteet v. W.T. Waggoner Estate*, 96 S.W.2d 405, 406 (Tex.Civ.App.—Amarillo 1936, no writ). As discussed above, the jury's answers to Questions One, Two, and Three were sufficient to support the trial court's judgment which suspended Daves from the practice of law. Consequently, we do not reach points of error thirteen, fourteen, or fifteen.

■ By his sixteenth and final point of error, Daves asserts that the trial court erred in rendering judgment against Daves for attorney's fees because the Commission waived that claim by not presenting any evidence to the jury and not securing a jury finding on this disputed fact issue on which he had a constitutional and statutory right to trial by jury.

The determination of appropriate sanctions to be imposed upon an attorney is within the discretion of the trial court, provided that the trial court finds from the verdict of the jury that the accused attorney's conduct constitutes professional misconduct. Tex.R. Disciplinary P. 3.09, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A–1 (Vernon 1997). In deciding which sanctions to impose, the trial court may, in its discretion, conduct a separate evidentiary hearing on the appropriate sanction to be imposed. Tex.R. Disciplinary P. 3.10. The payment of reasonable attorney's fees may be an ancillary requirement included in the sanctions that may be imposed by the trial court. Tex.R. Disciplinary P. 1.06(T)(8)(b).

■ The Texas Rules of Civil Procedure apply to Disciplinary Actions except as varied by the Rules of Disciplinary Conduct. Tex.R. Disciplinary P. 3.08(B). It is evident from these rules that the imposition of sanctions upon attorneys found guilty of professional misconduct is within the sole discretion of the trial court, and is not within the province of a jury. Accordingly, we conclude that the trial court did not err in imposing the sanction of attorney's fees against Daves, and we overrule point of error sixteen.

The judgment of the trial court is affirmed.