NO. 07-03-0408-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 11, 2006

_____

MILES E. and IRENE BALDWIN,

Appellants

v.

ROBERT E. GARNER, individually, and TEMPLETON & GARNER,

Appellees

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 75,051-E; HON. VANN CULP, PRESIDING

_____

***Memorandum Opinion***

_____

Before QUINN, C.J., REAVIS, J. and BOYD, S.J.[1]

Miles E. Baldwin and Irene Baldwin (Baldwin) appeal from a final judgment denying

them recovery against Robert E. Garner, individually, and Templeton & Garner (Garner)

but awarding Garner damages against them. Each party appealed from the final judgment.

We affirm.

*Background*

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T
CODE ANN. §75.002(a)(1) (Vernon Supp. 2005).

The matter before us involves a fee dispute. Baldwin retained Garner to prosecute claims against various individuals. The parties executed a retainer agreement under which Baldwin delivered to Garner $20,000 as a retainer. Upon pursuing various claims to a monetary judgment in favor of Baldwin in 1985, Garner withdrew from further representation after attempting collection efforts and hiring, as attorneys in his law firm, children of two of the judgment debtors. Thereafter, Baldwin sought to enforce the judgment against the judgment debtors. In doing so, he acquired an asset (the Michigan Chestnut or MC property) from a debtor's bankruptcy estate. The asset eventually proved valuable, affording Baldwin a return exceeding $750,000. Litigation, culminating in this appeal, followed.

Baldwin sued Garner for breach of contractual and fiduciary duties, negligence, and committing deceptive trade practices. So too did he request return of the unexpended retainer. In response, Garner sought a percentage of the monies recovered by Baldwin under the 1985 judgment by alleging choses in action sounding in breach of contract and fraud.

Upon motion for a partial summary judgment, the trial court determined that the retainer was not refundable. Furthermore, a subsequent jury trial resulted in the aforementioned verdict for Garner and the judgment underlying this appeal.

*Baldwin Argument One[2] – Garner's Purported Breach of Contract*

---

[2]We label Baldwin's contentions as "arguments" because he does not separately brief each of the nine issues. Rather, he combines several issues in each of his arguments. Thus, it is easier to address his contentions as arguments instead of issues or points of error.

Baldwin initially contends that the trial court erred in concluding that Garner was not obligated to return the balance of the $20,000 under the retainer agreement. We overrule the issue.

Baldwin correctly states that whether any portion of the retainer was refundable depended upon the agreement between the two parties. So, our task is to read the contract and determine who it obligated to do what. And, in undertaking that task, we heed various settled rules of law. The first dictates that construing an unambiguous contract involves a question of law which we resolve *de novo*. *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.–Amarillo 2000, no pet.). Second, it is imperative to give effect to the intent of those party to the agreement. *Id.* Furthermore, that intent is garnered from the language of the contract, which language is considered in its entirety. *Id.* That is, we peruse the complete document to understand, harmonize, and effectuate all its provisions. *Id.* So too must we afford the words contained in the agreement their plain, ordinary, and generally accepted meaning, unless the instrument requires otherwise. *Id.*; *Sun Operating, Ltd. v. Holt*, 984 S.W.2d 277, 285 (Tex. App.--Amarillo 1998, pet. denied). Finally, construction of the instrument must not lead to unreasonable or absurd results. *See Reilly v. Rangers Mgt, Inc.,* 727 S.W.2d 527, 530 (Tex. 1987) (stating that courts should avoid, when possible, a construction that is unreasonable, oppressive or inequitable); *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.–Fort Worth 2005, no pet.) (stating that when interpreting a contract, one should avoid, if possible, construction that is unreasonable, oppressive, inequitable, or absurd). With this in mind, we turn to the retainer agreement at issue.

3

The contract stated:

I [Garner] have agreed to represent you [Baldwin] and assist you in these matters and agree to use the best of my ability and capacity in so representing you on the following terms and conditions:

(1) I will be paid a retainer fee in advance of $20,000 cash.

(2) All costs and expenses incurred by me by way of travel, photocopies, telephone charges, court costs, depositions, and bond fees (to $5,000) and expert expert [sic] witnesses in the above and foregoing endeavors will be paid by the undersigned firm out of the retainer advanced.

(3) Any recoveries made in litigation for damages per se, I shall receive twenty percent (20%) of such *in addition to the retainer* after the first $100,000 has been recovered.

(4) On any properties which are foreclosed and which you retake ownership or possession of or any properties recovered through litigation, I shall be paid no portion of any profits or advantage which comes to you through such activities.

If you are agreeable to my doing this work, I will abide by your instructions and use my best efforts to the end that you may be ably and fully represented. In the event that you should become dissatisfied with my services or desire to terminate my services at any time, you may do so without further cost or expense to you, and I shall, *upon request*, return to you any portion of the retainer fee advanced which has not been used for payment of costs and expenses covered in Paragraph (2) *and any portion which has not been earned at the rate of $125 per hour according to my time records which shall be kept and delivered to you quarterly or more frequently should you desire*.

If you are agreeable to this undertaking on this basis, please so indicate by affixing your signatures below mine and attaching your check for $20,000.

(Emphasis added). As can be immediately seen, nothing in the words selected expressly states whether or not the $20,000 is refundable. Yet, the parties took care to note several things in the agreement. First, $20,000 was to be paid Garner in advance and as a condition of his assuming representation of Baldwin. Second, while costs and expenses were to be paid from the $20,000, so too were fees "earned at the rate of $125 per hour

4

according to [Garner's] time records . . . ."  These two indicia indicate that the $20,000 was contemplated as more than a deposit to cover expenses and costs; the parties also viewed it as a source of payment for services rendered by Garner on behalf of Baldwin.  Third, in discussing the extent of Garner's fee, the parties also spoke of giving him 20% of the damages recovered and which exceeded $100,000 "in addition to" the $20,000 retainer.[3]

Fourth, to the extent that Garner's services were ever terminated by Baldwin, the agreement obligated the former to return the balance of the retainer "upon request" of Baldwin.  In other words, the obligation to refund upon termination of the attorney/client relationship was dependent upon Baldwin requesting the monies, according to the expressed wording of the contract.  So, as per the contract, if Baldwin discharged Garner but did not request the funds, Garner was not obligated to return them.

From the above indicia, we infer the following.  Baldwin and Garner intended that the $20,000 retainer be used to pay both costs and expenses related to the prosecution of the claims as well as the fees incurred by Garner if there was no further recovery. Furthermore, the sum was not refundable unless Baldwin first terminated Garner's services and then demanded payment.  Indeed, if the funds were simply a refundable deposit, as argued by Baldwin, then there would have been no reason to include in the document either a provision addressing the return of funds upon the termination of Garner or one requiring Baldwin to first ask for their return.  *See MCI Tel. Corp. v. Texas Utilities Elec.*

---

[3]To the extent that Garner was to receive 20% of the recovered damages exceeding $100,000 and $20,000 is 20% of $100,000, it can reasonably be said that Garner contemplated a 20% across the board contingent fee arrangement.  However, the first 20% was to be paid in advance.

5

Co., 995 S.W.2d 647, 652 (Tex. 1999) (stating that a court must avoid interpreting a contract in a manner that renders aspects of it meaningless).

Moreover, to adopt Baldwin's contention that the retainer was refundable (after the payment of costs and expenses) even if Garner was never terminated would be to interpret the agreement in an unreasonable and inequitable way. Under it, Garner would be entitled to a fee if his conduct was less than satisfactory and resulted in his termination. However, he would not be so entitled if his performance was exemplary but failed to result in payment of damages exceeding $100,000. Interpreting the contract in a way that rewards bad behavior but punishes good is absurd and, thus, a construction that we should avoid. *See Reilly v. Rangers Mgt, Inc., supra; Pavecon, Inc. v. R-Com, Inc.*, *supra*.

In sum, the trial court did not err in construing the agreement in a manner holding that the $20,000 sum was non-refundable. Thus, we overrule Baldwin's first issue.

*Baldwin Argument Two – Authority to Sue Melroe*

Next, Baldwin contends that the retainer agreement did not authorize Garner to sue Irving L. and Edward Melroe. Yet, irrespective of whether the agreement expressly directed Garner to sue those two individuals, nothing therein directed him to forego suit. More importantly, the record contains a plethora of evidence illustrating that Baldwin discussed litigation against the Melroes with Garner before and after executing the agreement, understood that Garner would sue them, approved of the suit, and obtained benefit from the judgment eventually secured against them by Garner. Accordingly, we overrule the issue.

*Baldwin Argument Three – Amount to Credit*

6

Next, Baldwin argues that when calculating the amount of credit a judgment debtor is to receive when the judgment creditor obtains property in partial satisfaction of the judgment, one uses the "'bid in" amount, or the sum paid to acquire the property. Given this and the allegation that $25,000 was paid to acquire the Michigan Chestnut asset, the amount recovered for purposes of calculating the fee payable to Garner under the contract was only $25,000, Baldwin concludes. Yet, we find the argument inapposite for Garner was not a judgment debtor under the 1985 judgment. Thus, the issue is overruled.

*Baldwin Argument Four – Attorney's Fees/Interest Excluded*

Next, Baldwin argues that the attorney's fees and interest encompassed by the 1985 judgment are excluded from the formula used to calculate the amount of fees due Garner. We overrule the issue for several reasons.

First, the argument is inadequately briefed. Baldwin fails to cite us to evidence of record indicating the amount of attorney's fees and interest purportedly comprising the sum ordered payable under the judgment. TEX. R. APP. P. 38.1(h) (requiring the parties to cite to authority and the record). Thus, even if this argument was correct, which it is not, Baldwin failed to illustrate that the supposed error was harmful.

Second, the contention assumes that Garner agreed only to receive 20% of any "damages" recovered. Attorney's fees and interest are not considered damages, Baldwin continues, and because they are not, any such fees and interest must be omitted from the sum upon which Garner's fee is determined. In so construing the agreement, however, Baldwin ignored pertinent rules of contract interpretation.

As previously mentioned, the entire document must be considered when determining the intent of the parties. And, while paragraph three of the accord contains

7

the phrase "damages per se," those are not the only words used to describe Garner's entitlement. Again, the complete paragraph states: "[*a*]*ny recoveries* made in litigation for damages per se, I shall receive twenty percent (20%) of such *in addition to the retainer* after the first $100,000 has been recovered." (Emphasis added). The phrase "any recoveries" is rather encompassing. Indeed, the commonly known parameters of "any" include the idea of "every" and "all." MERRIAM-WEBSTER COLLEGIATE DICTIONARY 53 (10th ed. 1995). And, authority generally requires us to assign words their common or plain meaning when interpreting a contract. *Natural Gas Clearinghouse v. Midgard Energy Co.,* 113 S.W.3d 400, 406 (Tex. App.–Amarillo 2003, pet. denied).[4] And, to the extent that the parties expressly incorporated some sort of limitation in the paragraph, it appears in the phrase "after the first $100,000 has been recovered." Nothing is said about separating attorney's fees or interest from the scope of "recoveries," and, because the parties did not include the limitation now sought by Baldwin in the retainer agreement, we cannot add it. *See Cross Timbers Oil Co. v. Exxon Corp.,* 22 S.W.3d at 26 (holding that the parties are bound by the terms that they use).[5]

*Baldwin Argument Five – Duty to Disclose Anything to Garner*

Next, Baldwin argues that he had no duty to disclose anything to Garner or acquire the Michigan Chestnut property in a way providing Garner with a fee. We overrule the argument.

---

[4]No one argues that the phrase is ambiguous.

[5]We also reject Baldwin's contention that the opinion in *Levine v. Bayne, Snell & Krause, Ltd.*, 40 S.W.3d 92 (Tex. 2001) controls the outcome. Though *Levine* also dealt with the question of how to calculate an attorney's fee, the circumstances before the Supreme Court differed from those before us. Unlike the court in *Levine*, we do not have to decide what the client "received," for purposes of calculating the fee, when two opposing claims were offset against each other in the same judgment.

8

Regarding the duty to disclose, Baldwin's argument is twofold. He asserts that he had none because the contingency vesting Garner with an enforceable interest in the recoveries did not occur until after Garner terminated the attorney/client relationship with Baldwin on August 1, 1989. Furthermore, the purported contingency consisted of obtaining a final judgment. And, since the 1985 judgment was on appeal at the time Garner quit, it allegedly was not final. We reject the contention.

The record reveals that while Melroe appealed the judgment he and Baldwin nevertheless settled their dispute before August 1, 1989. This is of import because authority holds that an executory contract (such as a contingent fee agreement) vests the attorney with an enforceable interest when the dispute is resolved through final judgment or *settlement*. *In re Willis*, 143 B.R. 428, 432 (Bankr. E.D. Tex. 1992). Given that the claim of Baldwin arising from the judgment was actually settled before the appeal was dismissed or Garner purported to withdraw via the August 1st letter, the contingent fee agreement was no longer executory. It was executed. Thus, Garner's interest in the recoveries had vested.

Similarly misplaced is Baldwin's contention that he could use that portion of the judgment he owned to acquire the Michigan Chestnut interest to the exclusion of Garner. Through the fee agreement, Garner did not simply receive 20% of the judgment. Rather, he was entitled to 20% of what was *recovered* from Melroe after the first $100,000. So, to the extent that Baldwin recovered sums exceeding $100,000, Garner was entitled to 20% of them. This interpretation of the agreement also negates Baldwin's contention that he was entitled to allocate receipts from the Michigan Chestnut asset to interest first and thereby reduce the sums recoverable by Garner. Again, Garner was entitled to 20% of

9

"any recoveries," per the agreement, not simply 20% of what was left after payment of interest upon the principal reflected in the 1985 judgment.[6]

Finally, Baldwin cites two cases purportedly holding that Garner could only obtain an interest in sums he personally recovered on behalf of his client. Neither so state, however. The first, *Casey v. March*, 30 Tex. 180 (1867), dealt with whether an attorney could have a *possessory lien* on a judgment itself or monies payable under it before they were collected. The second, *Raley v. Hancock*, 77 S.W. 658 (Tex. Civ. App.–Austin 1903, no writ), also dealt with the matter of *liens* upon monies collected by another attorney. Yet, neither held that an attorney who executed a contingent fee agreement with his client had a contractual interest only in funds he personally collected.

*Baldwin Argument Six – No Evidence of Damages*

Next, Baldwin attacks the jury's verdict as it relates to the quantum of damages recoverable by Garner. The attacks are twofold. First, Baldwin suggests that the percentage received was to be paid only from damages recovered, not attorney's fees or interest. We addressed and rejected that allegation earlier. Again, it requires the injection into the retainer agreement of words or limitations the parties omitted.

Second, Baldwin again posits that he was entitled to allocate whatever recovery he received to post-judgment interest which accrued on the Melroe judgment. This argument too has been addressed and found inapposite.

---

[6]So too must it be noted that the authorities cited by Baldwin to support his argument dealt with the rights of a creditor *viz-a-viz* a debtor. Garner was not Baldwin's debtor. Thus, it did not matter that a creditor could allocate, against a debtor, whatever payments he received first to the interest and then to principle.

10

We further note that the evidence of record illustrates Baldwin recovered in excess of $1,000,000 due to the judgment obtained through the efforts of Garner and per the retainer agreement. And, though that sum far exceeded the $100,000 threshold mentioned in the fee agreement, Baldwin paid Garner none of the excess. Thus, more than a scintilla of evidence appears of record illustrating that Garner was damaged in the amount found by the trial court, *i.e.* $152,621.73.

In sum, we overrule this argument as well.

*Baldwin Argument Seven – No Evidence of Fraud*

Next, Baldwin claims that there was no evidence presented to satisfy any element of fraud. Again, his argument is twofold. First, he contends that Garner suffered no injury because the retainer agreement afforded him no interest in recoveries from Melroe and because attorneys other than Garner effectuated the recoveries from Melroe. We previously addressed and rejected each of these propositions. So, they cannot be used as a way of illustrating that Garner suffered no injury.

As his second ground, Baldwin contends that there is no evidence illustrating Garner relied on any misrepresentation of Baldwin regarding the ability to recover from Melroe. To assess the accuracy of this contention, it is imperative to discuss the form of the question submitted. It asked: "[d]id the Baldwins commit fraud against Templeton & Garner in regard to the Irving Melroe bankruptcy?" Accompanying the question was the following instruction:

Fraud occurs when –

a.    a party makes a material misrepresentation,

11

b. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

c. the misrepresentation is made with the intention that it should be acted on by the other party, and

d. the other party acts in reliance on the misrepresentation and thereby suffers injury.

\* \* \*

*Fraud also occurs* when –

a. a party conceals or fails to disclose a material fact within the knowledge of that party,

b. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth;

c. the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and

d. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

(Emphasis added). The final portion of the issue simply asked the jury to "[a]nswer 'yes' or 'no,'" to which it answered "yes."

As can be seen, fraud was submitted through two differing theories. *See Springs Window Fashions Division, Inc. v. The Blind Maker, Inc.,* 03-03-00367-CV, 2005 Tex. App. WL 1787440 (Tex. App.–Austin July 29, 2005, no pet. h.) (noting the various legal theories on which fraud can be based). And, while reliance was an element of the first, it was not of the second. So, in contending that there was no evidence of reliance, Baldwin's attack logically affects only the first way in which the jury could find fraud; he says nothing of the second. And, because the jury could have concluded that Garner established fraud under the second theory and Baldwin does not address it, we cannot sustain the argument.

12

*Daves v. Commission Lawyer Disc.*, 952 S.W.2d 573, 580 (Tex. App.–Amarillo 1997, pet. denied) (stating that purported error regarding a jury's answer to a particular question is harmless when the jury's other findings are sufficient to support the judgment).

*First Garner Issue – Punitive Damages*

Garner initially contends that the trial court erred when it denied him punitive damages even though the jury awarded him same. This was purportedly error because he proved fraud and the ensuing injuries were other than those arising from the breach of the underlying fee agreement. We overrule the issue.

A claim must sound in contract if liability arises from the contract or is determined by reference to the contract. *In re Weekley Homes, L.P.*, 04-0119, WL 2807410 *3 (Tex. October 28, 2005). Yet, if founded upon general duties imposed by law irrespective of the contract, it may sound in tort. *Id.* The former rule encompasses the situation at bar.

Though Garner claimed that he was defrauded, the basis for those allegations was inextricably tied to the retainer agreement and contractual duties imposed by it. The latter, not general duties imposed by law, obligated Baldwin to give him 20% of "all recoveries" above the initial $100,000. Moreover, it was that percentage that Garner sought and received, which percentage again was set by contract as opposed to general legal duties. Indeed, without the retainer agreement and the obligations arising under it, he would have had no general right to 20% of "all recoveries." Simply put, what Garner wanted was the benefit of his bargain with Baldwin irrespective of the label placed on the demand. *See Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc.* 960 S.W.2d 41, 45 (Tex.

13

1996) (recognizing precedent holding that one's claim sounds in contract as opposed to tort when the claimant is actually attempting to recover the benefit of the bargain under the agreement).[7] Given this, we cannot but hold that Baldwin's liability arose from the contractual retainer agreement and sounded in contract. Because it did, exemplary damages were not recoverable, and the trial court did not err in denying Garner same. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986); *see also Weber v. Domel,* 48 S.W.3d 435, 437 (Tex. App.–Waco 2001, no pet.) (holding that punitive damages are not recoverable for a breach of contract).

*Second Garner Issue – Frivolous Suit*

The next and final issue raised by Garner concerns the trial court's refusal to sanction Baldwin, under §17.50(c) of the Texas Business and Commerce Code, for initiating and prosecuting suit against him. We overrule the issue.

Statute authorizes a trial court to award a defendant reasonable and necessary attorney's fees against one prosecuting a deceptive trade practice claim. TEX. BUS. & COM. CODE ANN. §17.50(c) (Vernon 2005). However, the trial court must first find that the cause of action was groundless in fact or law, brought in bad faith, or brought for the purpose of harassment. *Id*. Moreover, the decision whether to sanction one under §17.50(c) lies

---

[7]Though the court in *Formosa Plastics* ultimately held that damages for fraud in the inducement were recoverable despite the existence of a contract, the circumstances there are distinguishable from those here. When the misrepresentations were uttered in *Formosa* there was no contract since the misrepresentations themselves induced the subsequent accord. Here, the retainer agreement establishing the rights and liabilities of those involved pre-existed the misrepresentations relating to the contract and its performance. Thus, it is quite understandable why tort recovery was permitted in *Formosa*; simply put, there could have been no contention that the duties emanated from anything other than general principles of law since there was no contract when the misrepresentations were made.

14

within the trial court's discretion.  *Riddick v. Quail Harbor Condominium Ass'n., Inc.*, 7 S.W.3d 663, 678 (Tex. App.–Houston [14th Dist.] 1999, no pet.).

Here, Baldwin alleged (in his live petition) a myriad of bases purportedly illustrating how Garner committed deceptive trade practices.  Yet, Garner did not illustrate how each was groundless or initiated in bad faith or for purposes of harassment.  For instance, nothing was said about the allegations involving the decision of Garner to hire as attorneys the offspring of several people he agreed to sue on behalf of Baldwin.  Nor does he address the allegation that hiring those attorneys purportedly created a conflict of interest.  We do not mean to say that such circumstances evinced a deceptive trade practice.  Rather, we mention the allegation simply because it was one that Baldwin cited as a deceptive trade practice and Garner had to address to carry his burden on appeal.  In other words, he had to explain why it, and every other supposedly bad act of Garner mentioned in Baldwin's live petition, was encompassed within §17.50(c).  Otherwise, it could not be said that he proved the trial court abused its discretion in denying recovery under the statute.[8]  Indeed, while some of the allegations may have fallen within the scope of §17.50(c), others may not have.  So, it was incumbent upon Garner to show why each did.

Having denied each issue and contention raised by the litigants, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Reavis, J., dissenting.

---

[8]Under that segment of his live petition dealing with deceptive trade practices, Baldwin incorporated all other acts of Garner previously mentioned in the pleading and which he considered objectionable.  Thus, the supposedly deceptive acts committed by Garner were not simply those expressly mentioned under the topic "Defendants' Violation of the Deceptive Trade Practices Act."

15