In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00192-CR


______________________________




DERRICK LENAL IRONS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 05-0398X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Derrick Lenal Irons appeals from his conviction by a jury for possession of a controlled
substance with intent to deliver and for possession of marihuana. These two charges were tried
together, and the jury assessed his punishment at ninety-nine years' confinement and a $250,000.00
fine on the first count, and two years' imprisonment in a state-jail facility and a $10,000.00 fine on
the second count.

 Irons contends (1) that the evidence is legally and factually insufficient to support the
conviction, (2) that the trial court erred by not instructing the jury on how to consider extraneous bad
acts at punishment, and (3) that he received ineffective assistance of counsel because at the
punishment stage, trial counsel failed to object to testimony about extraneous bad acts by Irons and
failed to request an instruction on how those bad acts were to be considered by the jury.

 This conviction rests on links to contraband. Irons was a passenger in an automobile in
which officers found 500 grams of cocaine and several pounds of marihuana. Irons was in the front
seat, the contraband was under several jackets in the middle of the back seat. At trial, the driver of
the car, Lamon West, testified that the contraband was all his and that Irons had no reason to know
of its existence. The jury obviously believed otherwise. The job of this Court is to determine
whether there is sufficient evidence to support the jury's determination. 

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 In a factual sufficiency review, we also view all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, No. AP-75,051, 2007 Tex. App. LEXIS 429 (Tex. Crim. App. Apr. 18,
2007); Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d
404, 414-15 (Tex. Crim. App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). 
In a factual sufficiency review, we are to afford "due deference" to a jury's determinations. Marshall,
210 S.W.3d at 625.

 Irons argues the evidence is insufficient because the State provided insufficient proof of
evidence that would link him to the contraband, either as a principal or as a party. When an accused
is not in exclusive possession of the place where contraband is found, it cannot be concluded he had
knowledge or control over the contraband unless there are additional independent facts and
circumstances which affirmatively link him to the contraband. Poindexter v. State, 153 S.W.3d 402
(Tex. Crim. App. 2005); Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); Menchaca
v. State, 901 S.W.2d 640, 651 (Tex. App.--El Paso 1995, pet. ref'd).

 Recognized factors include whether: (1) the contraband was in plain view or recovered from
an enclosed place; (2) the accused was the owner of the premises or the place where the contraband
was found; (3) the accused was found with a large amount of cash; (4) the contraband was
conveniently accessible to the accused; (5) the contraband was found in close proximity to the
accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other
contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the
accused; (9) the physical condition of the accused indicated recent consumption of the contraband
in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused
attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection
to the contraband; (14) the occupants of the premises gave conflicting statements about relevant
matters; (15) the accused made incriminating statements connecting himself to the contraband;
(16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under
suspicious circumstances. Washington v. State, 215 S.W.3d 551, 554 (Tex. App.--Texarkana 2007, 
no pet.) (mem. op., not designated for publication); Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex.
App.--Corpus Christi 2002, no pet.); Kyte v. State, 944 S.W.2d 29, 31-32 (Tex. App.--Texarkana
1997, no pet.). 

 There is no requisite number of links. Rather, it is the logical force the factors have in
establishing the elements of the offense that is important. In other words, the question to be
answered is this: "Is there evidence of circumstances, in addition to mere presence, that adequately
justifies the conclusion that the defendant knowingly possessed the substance." Evans v. State, 202
S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006). (1) See generally King v. State, 895 S.W.2d 701 (Tex.
Crim. App. 1995); Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.--Houston [1st Dist.] 1994, pet.
ref'd).

 In this case, the evidence shows that Irons was in the front passenger seat of a car stopped
for speeding by police. The testimony was that he appeared to be asleep. The police officer, Deputy
Mark Kiser, testified that when he stopped them just outside of Marshall, Texas, headed north on
Highway 59, the driver (West) told him that he was coming from Shreveport, Louisiana, and headed
for Corinth, Mississippi. (2)

 Kiser was suspicious. He then questioned the other passenger, Thomas Holland, who told
Kiser they had come from New Orleans and dropped West's nephew off in Houston. When Kiser
finally questioned Irons, his story was that he had been picked up by West in Arkansas and had been
sleeping ever since. At this point, Kiser was considerably more suspicious. He asked for permission
to search the vehicle, and West denied the request. Kiser, being a canine officer, had his dog with
him, and told West he was going to have the dog do an open air sweep. West became, as described
by Kiser, very nervous, and had to be called back from his wandering toward some nearby woods
several times. West yelled to Irons to "take off." Kiser testified that Irons did look around, but
another officer, Sergeant Steve Ashmore, was walking toward Irons with his weapon drawn. 

 The back door of the vehicle was open, and the dog alerted on a pile of clothing (several
jackets) in the middle of the back seat. Under the pile of jackets, officers found a black bag
containing 500 grams of cocaine and about a pound of marihuana.

 Kiser testified that Irons told him that the car belonged to his girlfriend. On cross-examination, some question was raised about that, with counsel attempting to show that Irons had
said, "Mon's girlfriend," rather than "my girlfriend." (3)

 Applying the factors listed above to the evidence, the drugs were recovered from an enclosed
space (the car), there was some evidence that Irons's girlfriend was the owner of the car, Irons had
approximately $600.00 in cash on his person, and the contraband was accessible and found close to
him. There was testimony that Irons might not have realized where he had been taken because he
had been "smoking weed"; that was also suggested as a reason for his sleepiness. In addition, the
occupants of the premises gave explanations that had very little in common about their travels. All
of these factors militate to some degree in favor of the State.

 The evidence that Irons was either sleeping or pretending to be sleeping could be interpreted
as an attempt to avoid questioning. There is also testimony suggesting that Irons at least briefly
considered attempting to flee, but did not because an officer was too near for such an attempt to have
a real chance of success. Both of those matters may favor the State's case, but the evidence is quite
weak.

 There was no evidence of any odor of contraband, no evidence that Irons had other
contraband on his person when arrested, and no paraphernalia was in view or found on his person. 
These factors do not link Irons to the contraband, and this lack of evidence applies in favor of Irons. 
 We also note that the quantity of cocaine recovered was quite large, which tends toward a
conclusion that it was not meant solely for personal use, but intended for sale to others.

 Reviewing all of the evidence in the light most favorable to the verdict, we find that it is
legally sufficient to allow a trier of fact to find that Irons possessed the cocaine with intent to deliver
and that he possessed the marihuana.

 In a factual sufficiency review, we also look at all the evidence, but in a neutral light. The
only evidence other than that of the State was taken from the driver of the car, West. West confessed
his own culpability, testifying that Irons had no knowledge of or connection with the drugs. West
was also cross-examined to considerable effect by the State. It was apparent that the trial was the
first time West had ever made these statements. West was incarcerated at the time of trial, and his
constantly shifting panorama of stories did not provide for easy belief. 

 The credibility of witnesses is uniquely within the purview of the fact-finder. Thus, it is
within the province of the jury to disbelieve West's exculpatory testimony and to instead believe that
Irons was involved in the possession and sale of the substantial amounts of contraband found with
him in the automobile. The State's evidence is not so weak, nor is the evidence to the contrary so
compelling to require reversal. We find the evidence factually sufficient. The contentions of error
are overruled.

 Irons next contends in two related arguments that error is shown (1) because the trial court
failed to instruct the jury on the burden of proof that the State had to meet before the jury could
consider extraneous bad acts at punishment, and (2) he contends that he received ineffective
assistance of counsel because his trial counsel did not complain about the absence of such an
instruction.

 At the punishment phase, the State may introduce evidence of "an extraneous crime or bad
act that is shown beyond a reasonable doubt." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(Vernon 2006). This standard of proof is law applicable to the case. Huizar v. State, 12 S.W.3d 479,
484 (Tex. Crim. App. 2000). A defendant is entitled to have the jury receive a reasonable doubt
instruction regarding extraneous offenses without request. Id. It is error if the trial court fails to
instruct the jury sua sponte. See id. at 481. A defendant need not object at trial to preserve error. 
Id. at 484. However, the failure to object increases an appellant's burden on appeal, imposing the
higher hurdle of a showing of egregious harm before reversal is in order. Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); Zarco v. State, 210 S.W.3d 816 (Tex.
App.--Houston [14th Dist.] 2006, no pet.). 

 At punishment, the State called a single witness: Jeff Palmer, the commander of the State
Line Narcotics Task Force in Northeast Mississippi. He testified that he personally knew Irons and
that Irons had been convicted in 1998 for possession of cocaine. He testified that in March 2006,
he had executed a search of Irons's house and found ninety-five grams of cocaine hidden in the
house, and nearly $5,000.00 in his pocket. He also testified that he took a statement from Irons,
which the State then introduced into evidence without objection. (4)

 In that statement, Irons set out the pattern that he followed in buying ounces of crack cocaine,
identifying his source, and stating that he normally bought three to four ounces at a time, one or two
times a week. 

 Palmer testified that he was familiar with the movement of narcotics in Corinth, Mississippi,
(Irons's home) and that he believed Irons was either the top or one of the top crack or powder cocaine
distributors in that area.

 On cross-examination, Palmer acknowledged that Irons had been out on bond on another case
and had not been tried. It was also brought out on cross-examination that he had arrested Irons
several times and that Irons had been found guilty only once, in 1998. On redirect, the State zeroed
in on the testimony about Irons having been arrested in Mississippi on drug charges June 8, 2004,
and had been released on bond; in other words, he was free on bond in the Mississippi case when
he was arrested in this case in March 2005. 

 The evidence was clearly admissible at punishment. However, Irons was entitled to a jury
instruction that evidence of these other bad acts had to be proven beyond a reasonable doubt as set
out above; the court was obligated to provide such an instruction sua sponte even in the absence of
a complaint by counsel. Even though Irons neither requested such an instruction nor objected to its
absence, there is no doubt that it was error to have omitted this instruction to the jury. 

 Because Irons neither requested such an instruction regarding the burden of proof concerning
these extraneous offenses nor objected to its omission from the charge, we must decide whether "the
error is so egregious and created such harm that he 'has not had a fair and impartial trial'--in short
'egregious harm.'" Almanza, 686 S.W.2d at 171; Moore v. State, 165 S.W.3d 118, 126 (Tex.
App.--Fort Worth 2005, no pet.). Our first duty in analyzing a jury-charge issue is to decide
whether error exists. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (citing Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). Then, if we find error, we analyze that error
for harm. Id. Preservation of charge error does not become an issue until we assess harm. Id. The
degree of harm necessary for reversal depends on whether the appellant preserved the error by
objection. Hutch, 922 S.W.2d at 171. Under Almanza, jury charge error requires reversal when the
defendant has properly objected to the charge and we find "some harm" to his rights. Almanza, 686
S.W.2d at 171; see also Hutch, 922 S.W.2d at 171. When the defendant fails to object or states that
he has no objection to the charge, we will not reverse for jury-charge error unless the record shows
"egregious harm" to the defendant. Bluitt v. State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004);
Almanza, 686 S.W.2d at 171. Thus, we review alleged charge error by considering two questions: 
(1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to
compel reversal. Ngo v. State, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). Thus, we look to see
whether the omission of this instruction caused Irons egregious harm, taking all of the circumstances
into account. 

 In making this determination, the actual degree of harm must be assayed by taking into
account a number of factors. Some of the factors which enter into this determination involve a
review of the entire jury charge, the state of the evidence (including the contested issues and the
weight of probative evidence), the argument of counsel, and any other relevant information revealed
by the record of the trial as a whole. Almanza, 686 S.W.2d at 171; Moore, 165 S.W.3d at 126. 
Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. 
Hutch, 922 S.W.2d at 171. The purpose of this review is to illuminate the actual, not just theoretical,
harm to the accused. Id. 

 Texas courts have concluded that egregious harm has not been shown because of the
omission of a reasonable doubt instruction when the defendant did not challenge the sufficiency of
the evidence connecting him to the extraneous conduct at trial and/or on appeal; see McClenton v.
State, 167 S.W.3d 86, 98 (Tex. App.--Waco 2005, no pet.); Bolden v. State, 73 S.W.3d 428, 432
(Tex. App.--Houston [1st Dist.] 2002, pet. ref'd); Arnold v. State, 7 S.W.3d 832, 835 (Tex.
App.--Eastland 1999, pet. ref'd); or when the evidence connecting the defendant to the extraneous
conduct is "clear-cut"; see Johnson v. State, 181 S.W.3d 760, 766 (Tex. App.--Waco 2005, pet.
ref'd); Allen v. State, 47 S.W.3d 47, 52-53 (Tex. App.--Fort Worth 2001, pet. ref'd). (5) 

 Further, there was no argument advanced to the jury that the burden of proof fell any lower
than the reasonable doubt standard or that the standard was any less onerous than the reasonable
doubt standard contained in the jury's previous instructions.

 In this case, the evidence is concise and pointed. It consists of direct testimony from a live
witness who was available for cross-examination and of Irons's own written statement in which he
set out his cocaine purchasing habits, giving the specific quantities and the frequency of the
purchases listed. Despite defense counsel's efforts on cross-examination, there is no evidence or
suggestion that casts doubt on either Palmer's testimony or on Irons's statement. Irrespective of
whether the jury was charged with the need to find it beyond a reasonable doubt, it meets that
standard anyway. 

 We acknowledge that the State's main point in jury argument at punishment was focused on
Irons's activities selling cocaine in Mississippi-- charges from which he had been released on bond
when arrested for this offense in Texas. We also recognize that, in this case, Irons received the
maximum punishment for the offenses. Nevertheless, even ordinary harm could only exist, since
the evidence was clearly admissible, if there was something to suggest that the reasonable doubt
standard might not have been met. There is no evidence to the contrary, and Palmer's testimony was
quite clear. (6) 

 We find that egregious harm has not been shown to exist in this case. This aspect of the
contentions of error is overruled.

 Irons also argues that he received ineffective assistance of counsel because of the failure to
take action to ensure that the reasonable doubt instruction was presented in the punishment charge,
and for failing to object to Palmer's testimony about unadjudicated offenses and bad acts. (7) 

 The standard of testing claims of ineffective assistance of counsel is set out in Strickland v.
Washington, 466 U.S. 668 (1984). To prevail on this claim, the appellant must prove by a
preponderance of the evidence (1) that his counsel's representation fell below an objective standard
of reasonableness and (2) that the deficient performance prejudiced his defense. Id. at 689; Rosales
v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove
that his attorney's representation fell below the standard of prevailing professional norms and that
there is a reasonable probability that, but for his attorney's deficiency, the result of the trial would
have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this
standard, a claimant must prove that counsel's representation so undermined the proper functioning
of the adversarial process that the trial cannot be relied on as having produced a just result. 
Strickland, 466 U.S. at 686. 

 Irons argues that the testimony about Irons being out on bond and under indictment for
delivery of a controlled substance in Mississippi when he was arrested in Texas for this offense, and
about prior arrests, was objectionable because testimony about the indictment in Mississippi and
arrests did not prove beyond a reasonable doubt that he had committed those acts. That is not a
proper basis for excluding the testimony. 

 Irons also points out that trial counsel asked questions on cross-examination that brought out
nonresponsive answers indicating that Irons was out on bond (at the time of this trial) for selling
cocaine and that he had arrested Irons "several different times." Irons suggests that failing to object
to those answers was ineffective. 

 It appears that the bond being referenced was in connection with the arrests and convictions
in Mississippi, which was the main topic of Palmer's previous testimony. There was no apparent
reason to object, and it was made clear to the jury that Irons had not been convicted of that crime. 
There was a reasonable tactical purpose to counsel's failure to object.

 Palmer's testimony that he had arrested Irons several different times was not responsive to
defense counsel's question, which was, "You arrested Mr. Irons in 1998?" The answer was
objectionable, but there could also be reasonably tactical reasons for counsel to elect not to interrupt
the flow of his questioning or to draw particular attention to matters by stopping the trial cold for an
objection and instruction to disregard. Counsel could have been concentrating his efforts on showing
the jury that Irons had never been otherwise convicted of a crime in Mississippi and that pure
allegations did not prove that a crime had been committed. We do not find counsel ineffective for
failing to object in these instances.

 Irons also argues that counsel was ineffective because of his failure to request the jury
instruction previously discussed. The argument is that, had he properly requested the instruction or
objected to its absence, he would then have only had to demonstrate "harm" rather than "egregious
harm" in order to prevail on appeal. Thus, he argues, counsel was constitutionally ineffective
because this error would have provided a much easier test for him to satisfy on appeal. 

 True, the test would have been much easier to meet if Irons's counsel had brought to the trial
court's attention that the charge should direct the attention of the jury to the reasonable doubt
standard which was required. It is also true that counsel's failure to call this to the attention of the
court was error on counsel's part. However, under these facts, even if counsel's actions in regard to
this oversight were incorrect, this mistake did not result in substantial prejudice and reversible error
has not been shown. In this case, there was simply no evidence to counter the evidence of the
extraneous acts and no real indication that they were either untrue or inaccurate.

 We find that there is not a reasonable probability that, but for Irons's trial counsel's alleged
deficiency in regard to the complained-of errors or perceived errors, the result of the trial would have
been different.

 We affirm the judgment.



 Bailey C. Moseley

 Justice


Date Submitted: April 10, 2007

Date Decided: May 10, 2007


Do Not Publish

1. The Texas Court of Criminal Appeals wrote in Evans that these should just be called "links"
from now on, as using the modifier "affirmative" adds to much confusion within the context of a
factual sufficiency review. 202 S.W.3d at 162. 
2. Harrison County, Texas, is west of Shreveport, Louisiana; Mississippi is east of Shreveport,
Louisiana.
3. This was referring to West, whose first name is "Lamon."
4. The testimony shows that Irons was given Miranda warnings and that he acknowledged the
written statement was true and correct and signed the statement. See Miranda v. Arizona, 384 U.S.
436 (1966).
5. It is not purported that the examples listed in this paragraph constitute an exclusive list.
6. This case is distinguishable from Avery v. State, 941 S.W.2d 221, 223 (Tex. App.--Corpus
Christi 1996, no pet.). In it, the defendant requested that the reasonable doubt charge be given but
the court refused, lowering the bar for the degree of harm from "egregious error" which had to be
shown in order to grant reversal.
7. Article 37.07 states that relevant evidence of prior bad acts is admissible at the punishment
phase if it can be established beyond a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 37.07,
§ 3(a)(1).