215 S.W.3d 551 (2007)
Christopher Shantel WASHINGTON, Appellant,
v.
The STATE of Texas, Appellee.
No. 06-06-00171-CR.
Court of Appeals of Texas, Texarkana.
Submitted January 25, 2007.
*553 Scott Rectenwald, Marshall, for appellant.
Al Davis, Assistant District Attorney, Marshall, for State.
Before MORRISS, C.J., CARTER and MOSELEY, JJ.

OPINION
Opinion by Justice CARTER.
At approximately 4:00 a.m., October 16, 2005, a Marshall police officer observed a Cadillac quickly enter and leave the parking lots of two motels known for high drug activity. The officer briefly followed the car and stopped it for a missing license plate light. See TEX. TRANSP. CODE ANN. § 547.322(g) (Vernon 1999). On approaching the car, the officer smelled "a strong odor of burnt marijuana." He searched the car after removing the driver, Christopher Shantel Washington, and three passengers from the car. In addition to finding loose marihuana residue (seeds and leaves) scattered throughout the car, the officer found, in plain view, several rocks of what appeared to be crack cocaine "in the driver's vicinity" on the driver's side floorboards. On further search, the officer found what appeared to be another rock of crack cocaine between the driver's seat cushions. He also found a cooler containing cash, a digital scale with a powdery residue, plastic shopping bags containing cash, and, in the trunk, a locked safe containing still more cash and a wallet. In the wallet retrieved from the safe in the trunk, police later found what appeared to be another rock of crack cocaine.
A jury found Washington guilty of possessing cocaine and assessed his punishment at two years' confinement in a state-jail facility and a $10,000.00 fine. On appeal, Washington challenges only the factual sufficiency of the evidence. Specifically, Washington asserts the evidence is insufficient to link him to any intentional or knowing possession of cocaine found in his vehicle.
(1) Standard of Review
In a factual sufficiency review, the appellate court views all the evidence in a neutral light and determines whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong and manifestly unjust or whether the great weight and preponderance of the evidence is contrary to the verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim.App.2006); see also Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.App.1996). Conflicts in the evidence are to be resolved by the jury. In doing so, it may accept one version of facts and reject another or reject any of a witness' testimony. Penagraph v. State, 623 S.W.2d 341 (Tex.Crim.App.1981). It is the jury's job to judge the credibility of the witnesses and the weight to be given their testimony, and it may resolve or reconcile conflicts in the testimony. Wesbrook v. State, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). When evidence both supports and conflicts with the verdict, we must assume that the fact-finder resolved the conflict in favor of the verdict. Turro v. State, 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Again, our role is not to "find" facts; rather, it is to see if we can determine that the verdict is against the great weight of the evidence presented at trial so as to be *554 clearly wrong and unjust. See Clewis, 922 S.W.2d at 135.
(2) Links Between the Accused and the Controlled Substance
A conviction for possession of cocaine, a penalty group 1 controlled substance, see TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Vernon Supp.2006), is supported only when the defendant "knowingly or intentionally possesses" the cocaine. See TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (Vernon 2003). Proof of possession requires evidence that the accused exercised "actual care, custody, control, or management" over the substance. TEX. PENAL CODE ANN. § 1.07(a)(39) (Vernon Supp.2006); see also TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon Supp.2006). Thus, the State must prove the accused (1) exercised "actual care, custody, control, or management over the [contraband]" and (2) knew that the matter "possessed" was contraband. Martin v. State, 753 S.W.2d 384, 386 (Tex.Crim. App.1988).
When an accused is not in exclusive possession of the place where contraband is found, it cannot be concluded he or she had knowledge or control over the contraband unless there are additional independent facts and circumstances that link the accused to the contraband. Poindexter v. State, 153 S.W.3d 402 (Tex.Crim.App. 2005). These "links" may be either direct or circumstantial and must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous.
The number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance. Taylor v. State, 106 S.W.3d 827, 831 (Tex.App.-Dallas 2003, no pet.); Williams v. State, 906 S.W.2d 58, 65 (Tex.App.-Tyler 1995, pet. ref'd); Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.-Austin 1991, pet. ref'd). There is no set formula of facts that dictate a finding of links sufficient to support an inference of knowing possession of contraband. Porter v. State, 873 S.W.2d 729, 732 (Tex. App.-Dallas 1994, pet. ref'd). Nonetheless, recognized factors include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. See Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex. App.-Corpus Christi 2002, no pet.); Kyte v. State, 944 S.W.2d 29, 31-32 (Tex.App.-Texarkana 1997, no pet.). It is the logical force the factors have in establishing the elements of the offense, not the number of them, that is important. In other words, we ask if there is evidence of circumstances, in addition to mere presence, that adequately justifies the conclusion that the *555 defendant knowingly possessed the substance. Evans v. State, 202 S.W.3d 158, 162 n. 9 (Tex.Crim.App.2006); see generally King v. State, 895 S.W.2d 701 (Tex. Crim.App.1995).
(3) Washington's Possession of the Contraband
Considering the framework just set out, we now turn to the facts of the case to determine if sufficient evidence links Washington to the cocaine. The State presented the jury with two bags of evidence purported to contain cocaine obtained from Washington's car: Exhibit 51A contained four samples (rocks and baggies), and Exhibit 51B contained one sample. A Department of Public Safety chemist testified she analyzed the contents of Exhibit 51A and determined it contained cocaine.[1] Due to office backlog, the chemist did not test the sample in Exhibit 51B. The State urged the jury to consider both exhibits in its deliberations.
The four samples in Exhibit 51A were retrieved from either the driver's side floorboard of Washington's vehicle or from within the crevices of the driver's seat. This exhibit included an empty white plastic baggie the police found in plain view and recovered from the driver's side floorboard "[r]ight where Mr. Washington's feet would have been if he was driving the vehicle," and "another plastic baggie just like the first one that had a white rock-like substance in it" from the driver's floorboard. Exhibit 51A also contained a crack rock found "on the driver's seat where Mr. Washington was sitting," specifically, "in between the part you sit on and the back."
After finding these rocks of crack cocaine, the police searched the trunk of the car, where they found the locked safe. After obtaining the key from Washington, the police opened the safe and found a wallet, inside which police found "another bag that appeared to contain crack cocaine." This suspect rock was the untested sample submitted to the jury as Exhibit 51B. The State urged the jury to consider circumstantial evidence, that this was indeed cocaine.
Washington does not dispute his ownership of the Cadillac he was driving; indeed, the receipts for Washington's purchase of and monthly payments on the Cadillac were found in the trunk. Nor does Washington assert the drugs belonged to one of the three passengers in the car at the time of the arrest. Instead, Washington asserts he was unaware of the cocaine's presence in the vehicle since the cocaine either (1) remained there from the car's previous owner (a convicted drug possessor) or (2) was, unbeknownst to Washington, dropped there by someone listening to music in the car earlier that evening.
Washington had purchased the car just two months before his arrest. Washington's mother testified she helped her then nineteen-year-old son buy the car from Tory McCoy at Brother's Car Lot. Washington's mother told the jury that, when she and her son went to pick up the car, it was not parked on the lot since McCoy had been driving the Cadillac as his personal vehicle.
McCoy testified, but denied using the Cadillac as his personal car. McCoy told the jury he had driven the Cadillac for work before selling it to Washington. McCoy admitted he was currently in jail for possession of marihuana and was facing other drug charges. On cross-examination, *556 McCoy stated that, before selling the cars, the car lot typically details the interiors. McCoy did not remember if Washington's Cadillac had been detailed. McCoy denied that any marihuana or crack cocaine found in the car came from him.
In support of the contention or inference that some unknown person had left the contraband in Washington's car, and to provide an explanation for the cash found in the car, Washington presented several witnesses who had been with him the evening of his arrest. Two of his cousins, who had been among the three passengers at the time of arrest, testified Washington was a party promoter and had hosted a party the night of his arrest. At his parties, Washington provided music, drinks, and food; he also sold shirts, shoes, and CDs (of himself rapping) out of his car to partygoers. Washington's cousins told the jury that people at the party had been smoking marihuana and that they had seen people in Washington's car earlier that night at the party listening to and buying CDs and shirts. One cousin testified she had seen people in and around the Cadillac without Washington "through the whole time we was there" at the party. The cousins testified that, after the party, they had driven to motel parking lots that the police had viewed so suspiciously only to drop off some partygoers on the way home.
Following the factors arrayed above, we note as an initial matter that, after introducing evidence of the large amounts of cash found in the car, the State appears to have dropped this as a factor linking Washington to the cocaine. At closing argument at trial, and now also on appeal, the State appears to concede that Washington earned his living by throwing parties, that he had thrown one the evening of his arrest, and that the money in his car may not be linked to drugs. Other links not present in this case are: (1) a strong residual odor of the contraband was not present;[2] (2) although one officer on the scene testified Washington "had bloodshot eyes . . . appeared giddy or the most common term would be `high,'" the officers suggested that Washington was like this from marihuana, not from the recent consumption of the contraband in question, i.e., cocaine; (3) the conduct of the accused did not indicate a consciousness of guilt, or an attempt to flee; indeed, Washington pulled over, followed instructions, gave his license and keysincluding to the safeto police; and (4) Washington did not appear to make any furtive gestures; (5) the occupants of the premises gave consistent statements about not using any drugs that evening, but seeing others do so; (6) Washington never incriminated himself.
Nevertheless, we note the State linked Washington to the cocaine in many other ways: (1) most of the cocaine from Exhibit 51A was in plain view on the floorboard; (2) Washington was the owner of the vehicle where the cocaine was found; (3) the cocaine on the floorboard and in the driver's seat was immediately accessible by Washington; (4) the cocaine on the floorboard and in the driver's seat was found in close proximity to Washington; (5) Washington possessed other contraband when arrested, namely, some marihuana seeds and leaves; (6) the quantity of the cocaine, though less than one gram, came from multiple locations throughout the car; (7) a digital scale encrusted with a white, powdery *557 residue was found in Washington's vehicle; (8) Washington had a special connection to the cocaine at his feet; (9) Washington had a special connection to the suspected contraband stuck to a baby picture in his wallet in a safe to which he held the keys; and (10) police observed Washington in a suspicious area under suspicious circumstances, at motels known for high drug activity at an early hour.
The logical force of the evidence indicates that the many rocks of crack cocaine throughout Washington's car were knowingly under Washington's care, custody, control, or management. Cf. Evans, 202 S.W.3d at 162. Although Washington presented a plausible scenario in which the cocaine was left in his car by others without his knowledge, the jury was not required to believe this evidence and was free to reject Washington's alternate scenario. See id. at 165. The great weight and preponderance of the evidence supports the verdict, and the evidence supporting the verdict is not so weak that the jury's verdict is clearly wrong and manifestly unjust. See Watson, 204 S.W.3d at 417.
We overrule Washington's sole point of error and affirm the judgment.
NOTES
[1] The chemist did not specify, but did imply, that each of the four samples in Exhibit 51A contained cocaine.
[2] Several officers testified to an odor of marihuana in the car, but Washington was not charged with possession of marihuana. Moreover, several witnesses testified to being around others' marihuana smoke over the course of the evening. Linking Washington to the cocaine via the odor of marihuana is illogical and does not assist us in assuring against convictions based on fortuitous proximity. See Evans, 202 S.W.3d at 161-62.