NO. 07-07-0001-CR; 07-07-0002-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



NOVEMBER 21, 2007


______________________________



BYRICE SANSOM, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B16862-0606, B16863-0606; HONORABLE ED SELF, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

MEMORANDUM OPINION


 Appellant Byrice Sansom appeals from his convictions by jury of aggravated assault
with a deadly weapon and his concurrent sentences of sixty years in the Institutional
Division of the Texas Department of Criminal Justice. (1) We agree with appointed counsel's
conclusion the records fails to show any meritorious issue which would support the
appeals, and affirm the trial court's judgment in both causes. 

 Appellant was charged in two single-count indictments of aggravated assault with
a deadly weapon. Each indictment also contained an enhancement paragraph setting forth
appellant's prior felony conviction for sexual assault of a child. After the jury returned a
verdict of guilty as alleged in each indictment, appellant plead true to the enhancement
paragraphs. Consistent with the jury's verdict on punishment, the court sentenced
appellant to sixty years in each cause to run concurrently. This appeal followed.

 The record reflects that the State presented thirteen witnesses and eighteen exhibits
to show that appellant threatened Daidron Ray with imminent bodily injury by driving at him
with an automobile. The evidence also showed that on the same occasion appellant made
use of a folding, lock-blade knife or a large stick, or both weapons, (2) to threaten Willie Ray
with imminent bodily injury. Appellant's appointed appellate counsel has filed a motion to withdraw and a brief in
support pursuant to Anders v. California, 386 U.S. 738 (1967), in which he certifies that he
has diligently reviewed the record and, in his professional opinion, under the controlling
authorities and facts of the cases, there is no reversible error or legitimate grounds on which
a non-frivolous appeal can arguably be predicated. The brief discusses in detail the
procedural history of these two causes and the events at trial. Counsel also notes that a
potential issue on which error may lie is in the sufficiency of evidence supporting the jury's
verdict of guilt. Counsel has certified that a copy of the Anders brief and motion to withdraw
have been served on appellant, and that counsel has advised appellant of his right to review
the record and file a pro se response. Johnson v. State, 885 S.W.2d 641, 645
(Tex.App.-Waco 1994, pet. ref'd). 

 By letter, this Court also notified appellant of his opportunity to submit a response to
the Anders brief and motion to withdraw filed by his counsel. Appellant filed a response
raising legal and factual sufficiency of the evidence to support his conviction as well as an
allegation that the trial court erred by not instructing the jury on the lesser-included offense
of simple assault. The State has not filed a brief.

 In conformity with the standards set out by the United States Supreme Court, we will
not rule on the motion to withdraw until we have independently examined the record in each
matter. Nichols v. State, 954 S.W.2d 83, 86 (Tex.App.-San Antonio 1997, no pet.). If this
Court determines either appeal has merit, we will remand it to the trial court for appointment
of new counsel. Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App.1991). 

 As noted, appellate counsel points to one ground on which a meritorious argument
may lie on appeal. Specifically, counsel notes potential legal and factual insufficiency of the
evidence to support appellant's conviction in each cause. Appellant notes the same in his
response. (3) After a complete review of the record, however, we agree with appellate counsel
that the grounds identified do not arguably support an appeal.

 Appellant's response points to conflicts in the testimony presented by various
witnesses. It is the province of the jury to resolve or reconcile conflicts in testimony, and the
jury is privileged to believe all, some or none of the testimony of any particular witness. 
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000); Washington v. State, 215
S.W.3d 551, 553 (Tex.App.-Texarkana 2007, no pet.). 

 Our review convinces us that appellate counsel conducted a complete review of
the record for each cause. We have also made independent examinations of the entire
record for each cause to determine whether there are any arguable grounds which might
support the appeals from appellant's convictions and sentences. We agree the records
present no meritorious grounds for review. Accordingly, we grant counsel's motion to
withdraw (4) and affirm the judgments of the trial court. 



 James T. Campbell

 Justice


Do not publish.
1. The offenses were tried together in the trial court. Appellate counsel submitted a
single Anders brief addressing both causes. Appellant's response also addresses both
causes, and we address them together. 
2. The indictment alleged appellant used or exhibited a knife and a stick. The court's
charge instructed the jury that it could find appellant guilty if it determined beyond a
reasonable doubt he used or exhibited a knife or a stick as a deadly weapon. See
Kitchens v. State, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991); Cowan v. State, 562
S.W.2d 236, 240 (Tex.Crim.App. 1981); Watkins v. State, 623 S.W.2d 954, 955
(Tex.App.-Dallas 1981, no pet.) (disjunctive charge of deadly weapon permitted despite
conjunctive language in indictment).
3. As noted, appellant's fifth point of error states that the trial court erred in denying
his request for an instruction with regard to the lesser-included offense of simple assault.
However, appellant does not address this issue in his response, and our review of the
record presents no arguably meritorious issue on this point. 
4. Counsel shall, within five days after the opinion is handed down, send his client a
copy of the opinion and judgment, along with notification of the defendant's right to file a
pro se petition for discretionary review. Tex. R. App. P. 48.4.



ept and delivered to you quarterly or more
frequently should you desire.


 If you are agreeable to this undertaking on this basis, please so indicate by affixing
your signatures below mine and attaching your check for $20,000.


(Emphasis added). As can be immediately seen, nothing in the words selected expressly
states whether or not the $20,000 is refundable. Yet, the parties took care to note several
things in the agreement. First, $20,000 was to be paid Garner in advance and as a
condition of his assuming representation of Baldwin. Second, while costs and expenses
were to be paid from the $20,000, so too were fees "earned at the rate of $125 per hour
according to [Garner's] time records . . . ." These two indicia indicate that the $20,000 was
contemplated as more than a deposit to cover expenses and costs; the parties also viewed
it as a source of payment for services rendered by Garner on behalf of Baldwin. Third, in
discussing the extent of Garner's fee, the parties also spoke of giving him 20% of the
damages recovered and which exceeded $100,000 "in addition to" the $20,000 retainer. (3) 


 Fourth, to the extent that Garner's services were ever terminated by Baldwin, the
agreement obligated the former to return the balance of the retainer "upon request" of
Baldwin. In other words, the obligation to refund upon termination of the attorney/client
relationship was dependent upon Baldwin requesting the monies, according to the
expressed wording of the contract. So, as per the contract, if Baldwin discharged Garner
but did not request the funds, Garner was not obligated to return them. 

 From the above indicia, we infer the following. Baldwin and Garner intended that
the $20,000 retainer be used to pay both costs and expenses related to the prosecution
of the claims as well as the fees incurred by Garner if there was no further recovery. 
Furthermore, the sum was not refundable unless Baldwin first terminated Garner's services
and then demanded payment. Indeed, if the funds were simply a refundable deposit, as
argued by Baldwin, then there would have been no reason to include in the document
either a provision addressing the return of funds upon the termination of Garner or one
requiring Baldwin to first ask for their return. See MCI Tel. Corp. v. Texas Utilities Elec.
Co., 995 S.W.2d 647, 652 (Tex. 1999) (stating that a court must avoid interpreting a
contract in a manner that renders aspects of it meaningless). 

 Moreover, to adopt Baldwin's contention that the retainer was refundable (after the
payment of costs and expenses) even if Garner was never terminated would be to interpret
the agreement in an unreasonable and inequitable way. Under it, Garner would be entitled
to a fee if his conduct was less than satisfactory and resulted in his termination. However,
he would not be so entitled if his performance was exemplary but failed to result in
payment of damages exceeding $100,000. Interpreting the contract in a way that rewards
bad behavior but punishes good is absurd and, thus, a construction that we should avoid. 
See Reilly v. Rangers Mgt, Inc., supra; Pavecon, Inc. v. R-Com, Inc., supra.

 In sum, the trial court did not err in construing the agreement in a manner holding
that the $20,000 sum was non-refundable. Thus, we overrule Baldwin's first issue.

 Baldwin Argument Two - Authority to Sue Melroe

 Next, Baldwin contends that the retainer agreement did not authorize Garner to sue
Irving L. and Edward Melroe. Yet, irrespective of whether the agreement expressly
directed Garner to sue those two individuals, nothing therein directed him to forego suit. 
More importantly, the record contains a plethora of evidence illustrating that Baldwin
discussed litigation against the Melroes with Garner before and after executing the
agreement, understood that Garner would sue them, approved of the suit, and obtained
benefit from the judgment eventually secured against them by Garner. Accordingly, we
overrule the issue.

 Baldwin Argument Three - Amount to Credit

 Next, Baldwin argues that when calculating the amount of credit a judgment debtor
is to receive when the judgment creditor obtains property in partial satisfaction of the
judgment, one uses the "'bid in" amount, or the sum paid to acquire the property. Given
this and the allegation that $25,000 was paid to acquire the Michigan Chestnut asset, the
amount recovered for purposes of calculating the fee payable to Garner under the contract
was only $25,000, Baldwin concludes. Yet, we find the argument inapposite for Garner
was not a judgment debtor under the 1985 judgment. Thus, the issue is overruled.

 Baldwin Argument Four - Attorney's Fees/Interest Excluded

 Next, Baldwin argues that the attorney's fees and interest encompassed by the 1985
judgment are excluded from the formula used to calculate the amount of fees due Garner. 
We overrule the issue for several reasons.

 First, the argument is inadequately briefed. Baldwin fails to cite us to evidence of
record indicating the amount of attorney's fees and interest purportedly comprising the sum
ordered payable under the judgment. Tex. R. App. P. 38.1(h) (requiring the parties to cite
to authority and the record). Thus, even if this argument was correct, which it is not,
Baldwin failed to illustrate that the supposed error was harmful.

 Second, the contention assumes that Garner agreed only to receive 20% of any
"damages" recovered. Attorney's fees and interest are not considered damages, Baldwin
continues, and because they are not, any such fees and interest must be omitted from the
sum upon which Garner's fee is determined. In so construing the agreement, however,
Baldwin ignored pertinent rules of contract interpretation. 

 As previously mentioned, the entire document must be considered when
determining the intent of the parties. And, while paragraph three of the accord contains
the phrase "damages per se," those are not the only words used to describe Garner's
entitlement. Again, the complete paragraph states: "[a]ny recoveries made in litigation for
damages per se, I shall receive twenty percent (20%) of such in addition to the retainer
after the first $100,000 has been recovered." (Emphasis added). The phrase "any
recoveries" is rather encompassing. Indeed, the commonly known parameters of "any"
include the idea of "every" and "all." Merriam-Webster Collegiate Dictionary 53 (10th
ed. 1995). And, authority generally requires us to assign words their common or plain
meaning when interpreting a contract. Natural Gas Clearinghouse v. Midgard Energy
Co.,113 S.W.3d 400, 406 (Tex. App.-Amarillo 2003, pet. denied). (4) And, to the extent that
the parties expressly incorporated some sort of limitation in the paragraph, it appears in the
phrase "after the first $100,000 has been recovered." Nothing is said about separating
attorney's fees or interest from the scope of "recoveries," and, because the parties did not
include the limitation now sought by Baldwin in the retainer agreement, we cannot add it. 
See Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d at 26 (holding that the parties are
bound by the terms that they use). (5)

 Baldwin Argument Five - Duty to Disclose Anything to Garner

 Next, Baldwin argues that he had no duty to disclose anything to Garner or acquire
the Michigan Chestnut property in a way providing Garner with a fee. We overrule the
argument.

 Regarding the duty to disclose, Baldwin's argument is twofold. He asserts that he
had none because the contingency vesting Garner with an enforceable interest in the
recoveries did not occur until after Garner terminated the attorney/client relationship with
Baldwin on August 1, 1989. Furthermore, the purported contingency consisted of obtaining
a final judgment. And, since the 1985 judgment was on appeal at the time Garner quit, it
allegedly was not final. We reject the contention. 

 The record reveals that while Melroe appealed the judgment he and Baldwin
nevertheless settled their dispute before August 1, 1989. This is of import because
authority holds that an executory contract (such as a contingent fee agreement) vests the
attorney with an enforceable interest when the dispute is resolved through final judgment
or settlement. In re Willis, 143 B.R. 428, 432 (Bankr. E.D. Tex. 1992). Given that the claim
of Baldwin arising from the judgment was actually settled before the appeal was dismissed
or Garner purported to withdraw via the August 1st letter, the contingent fee agreement
was no longer executory. It was executed. Thus, Garner's interest in the recoveries had
vested.

 Similarly misplaced is Baldwin's contention that he could use that portion of the
judgment he owned to acquire the Michigan Chestnut interest to the exclusion of Garner. 
Through the fee agreement, Garner did not simply receive 20% of the judgment. Rather,
he was entitled to 20% of what was recovered from Melroe after the first $100,000. So,
to the extent that Baldwin recovered sums exceeding $100,000, Garner was entitled to
20% of them. This interpretation of the agreement also negates Baldwin's contention that
he was entitled to allocate receipts from the Michigan Chestnut asset to interest first and
thereby reduce the sums recoverable by Garner. Again, Garner was entitled to 20% of
"any recoveries," per the agreement, not simply 20% of what was left after payment of
interest upon the principal reflected in the 1985 judgment. (6)

 Finally, Baldwin cites two cases purportedly holding that Garner could only obtain
an interest in sums he personally recovered on behalf of his client. Neither so state,
however. The first, Casey v. March, 30 Tex. 180 (1867), dealt with whether an attorney
could have a possessory lien on a judgment itself or monies payable under it before they
were collected. The second, Raley v. Hancock, 77 S.W. 658 (Tex. Civ. App.-Austin 1903,
no writ), also dealt with the matter of liens upon monies collected by another attorney. Yet,
neither held that an attorney who executed a contingent fee agreement with his client had
a contractual interest only in funds he personally collected. 

 Baldwin Argument Six - No Evidence of Damages

 Next, Baldwin attacks the jury's verdict as it relates to the quantum of damages
recoverable by Garner. The attacks are twofold. First, Baldwin suggests that the
percentage received was to be paid only from damages recovered, not attorney's fees or
interest. We addressed and rejected that allegation earlier. Again, it requires the injection
into the retainer agreement of words or limitations the parties omitted.

 Second, Baldwin again posits that he was entitled to allocate whatever recovery he
received to post-judgment interest which accrued on the Melroe judgment. This argument
too has been addressed and found inapposite. 

 We further note that the evidence of record illustrates Baldwin recovered in excess
of $1,000,000 due to the judgment obtained through the efforts of Garner and per the
retainer agreement. And, though that sum far exceeded the $100,000 threshold
mentioned in the fee agreement, Baldwin paid Garner none of the excess. Thus, more
than a scintilla of evidence appears of record illustrating that Garner was damaged in the
amount found by the trial court, i.e. $152,621.73.

 In sum, we overrule this argument as well. 

 Baldwin Argument Seven - No Evidence of Fraud

 Next, Baldwin claims that there was no evidence presented to satisfy any element
of fraud. Again, his argument is twofold. First, he contends that Garner suffered no injury
because the retainer agreement afforded him no interest in recoveries from Melroe and
because attorneys other than Garner effectuated the recoveries from Melroe. We
previously addressed and rejected each of these propositions. So, they cannot be used
as a way of illustrating that Garner suffered no injury.

 As his second ground, Baldwin contends that there is no evidence illustrating Garner
relied on any misrepresentation of Baldwin regarding the ability to recover from Melroe. 
To assess the accuracy of this contention, it is imperative to discuss the form of the
question submitted. It asked: "[d]id the Baldwins commit fraud against Templeton &
Garner in regard to the Irving Melroe bankruptcy?" Accompanying the question was the
following instruction:

 Fraud occurs when -



 a party makes a material misrepresentation,

 the misrepresentation is made with knowledge of its falsity or made
recklessly without any knowledge of the truth and as a positive
assertion,


 


 the misrepresentation is made with the intention that it should be
acted on by the other party, and

 the other party acts in reliance on the misrepresentation and thereby
suffers injury.



* * *


 

 Fraud also occurs when -

 

 a. a party conceals or fails to disclose a material fact within the knowledge of that party,


 b. the party knows that the other party is ignorant of the fact and does not
have an equal opportunity to discover the truth;


 c. the party intends to induce the other party to take some action by
concealing or failing to disclose the fact; and 


 d. the other party suffers injury as a result of acting without knowledge of the
undisclosed fact.


(Emphasis added). The final portion of the issue simply asked the jury to "[a]nswer 'yes'
or 'no,'" to which it answered "yes." 

 As can be seen, fraud was submitted through two differing theories. See Springs
Window Fashions Division, Inc. v. The Blind Maker, Inc., 03-03-00367-CV, 2005 Tex. App.
WL 1787440 (Tex. App.-Austin July 29, 2005, no pet. h.) (noting the various legal theories
on which fraud can be based). And, while reliance was an element of the first, it was not
of the second. So, in contending that there was no evidence of reliance, Baldwin's attack
logically affects only the first way in which the jury could find fraud; he says nothing of the
second. And, because the jury could have concluded that Garner established fraud under
the second theory and Baldwin does not address it, we cannot sustain the argument. 
Daves v. Commission Lawyer Disc., 952 S.W.2d 573, 580 (Tex. App.-Amarillo 1997, pet.
denied) (stating that purported error regarding a jury's answer to a particular question is
harmless when the jury's other findings are sufficient to support the judgment).

 

 First Garner Issue - Punitive Damages

 Garner initially contends that the trial court erred when it denied him punitive
damages even though the jury awarded him same. This was purportedly error because
he proved fraud and the ensuing injuries were other than those arising from the breach of
the underlying fee agreement. We overrule the issue.

 A claim must sound in contract if liability arises from the contract or is determined
by reference to the contract. In re Weekley Homes, L.P., 04-0119, WL 2807410 *3 (Tex.
October 28, 2005). Yet, if founded upon general duties imposed by law irrespective of the
contract, it may sound in tort. Id. The former rule encompasses the situation at bar. 

 Though Garner claimed that he was defrauded, the basis for those allegations was
inextricably tied to the retainer agreement and contractual duties imposed by it. The latter,
not general duties imposed by law, obligated Baldwin to give him 20% of "all recoveries"
above the initial $100,000. Moreover, it was that percentage that Garner sought and
received, which percentage again was set by contract as opposed to general legal duties. 
Indeed, without the retainer agreement and the obligations arising under it, he would have
had no general right to 20% of "all recoveries." Simply put, what Garner wanted was the
benefit of his bargain with Baldwin irrespective of the label placed on the demand. See
Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc. 960 S.W.2d 41, 45 (Tex.
1996) (recognizing precedent holding that one's claim sounds in contract as opposed to
tort when the claimant is actually attempting to recover the benefit of the bargain under the
agreement). (7) Given this, we cannot but hold that Baldwin's liability arose from the
contractual retainer agreement and sounded in contract. Because it did, exemplary
damages were not recoverable, and the trial court did not err in denying Garner same. See
Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex.1986); see also Weber v.
Domel, 48 S.W.3d 435, 437 (Tex. App.-Waco 2001, no pet.) (holding that punitive
damages are not recoverable for a breach of contract).

 Second Garner Issue - Frivolous Suit

 The next and final issue raised by Garner concerns the trial court's refusal to
sanction Baldwin, under §17.50(c) of the Texas Business and Commerce Code, for
initiating and prosecuting suit against him. We overrule the issue.

 Statute authorizes a trial court to award a defendant reasonable and necessary
attorney's fees against one prosecuting a deceptive trade practice claim. Tex. Bus. & Com.
Code Ann. §17.50(c) (Vernon 2005). However, the trial court must first find that the cause
of action was groundless in fact or law, brought in bad faith, or brought for the purpose of
harassment. Id. Moreover, the decision whether to sanction one under §17.50(c) lies
within the trial court's discretion. Riddick v. Quail Harbor Condominium Ass'n., Inc., 7
S.W.3d 663, 678 (Tex. App.-Houston [14th Dist.] 1999, no pet.). 

 Here, Baldwin alleged (in his live petition) a myriad of bases purportedly illustrating
how Garner committed deceptive trade practices. Yet, Garner did not illustrate how each
was groundless or initiated in bad faith or for purposes of harassment. For instance,
nothing was said about the allegations involving the decision of Garner to hire as attorneys
the offspring of several people he agreed to sue on behalf of Baldwin. Nor does he
address the allegation that hiring those attorneys purportedly created a conflict of interest. 
We do not mean to say that such circumstances evinced a deceptive trade practice. 
Rather, we mention the allegation simply because it was one that Baldwin cited as a
deceptive trade practice and Garner had to address to carry his burden on appeal. In other
words, he had to explain why it, and every other supposedly bad act of Garner mentioned
in Baldwin's live petition, was encompassed within §17.50(c). Otherwise, it could not be
said that he proved the trial court abused its discretion in denying recovery under the
statute. (8) Indeed, while some of the allegations may have fallen within the scope of
§17.50(c), others may not have. So, it was incumbent upon Garner to show why each did.

 Having denied each issue and contention raised by the litigants, we affirm the
judgment of the trial court. 

 Brian Quinn

 Chief Justice


Reavis, J., dissenting.

 NO. 07-03-0408-CV


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY 11, 2006 


______________________________



MILES E. and IRENE BALDWIN, 


 Appellants


v.



ROBERT E. GARNER, individually, and TEMPLETON & GARNER,


 

 Appellees

_________________________________



FROM THE 108
TH DISTRICT COURT OF POTTER COUNTY;



NO. 75,051-E; HON. VANN CULP, PRESIDING


________________________________



Memorandum Opinion


________________________________



Before QUINN, C.J., REAVIS, J. and BOYD, S.J. (9)



 Because I conclude the trial court erred in holding that the July 1, 1982 fee
agreement was revocable in whole or in part, I respectfully dissent to that determination.

 In Archer v. Griffith, 390 S.W.2d 735, 739 (Tex. 1964) (citing Story, Equity
Jurisprudence, 7th ed. 1857, s 311), after noting the relationship between an attorney and
client is highly fiduciary and that their dealings are subject to scrutiny as a transaction
between a trustee and beneficiary, the Court held as follows:

 [t]he burden of establishing its perfect fairness, adequacy, and equity, is
thrown upon the attorney, upon the general rule, that he who bargains in a
matter of advantage with a person, placing a confidence in him, is bound to
show that a reasonable use has been made of that confidence; a rule
applying equally to all persons standing in confidential relations with each
other. 


Later, in Levine v. Bayne, Snell & Krause, Ltd., 40 S.W.3d 92, 95-96 (Tex. 2001), the Court
adopted the Restatement (Third) of the Law Governing Lawyers § 18, and held that
because a lawyer is more familiar with the intricacies of legal representation and with the
law and drafting of fee agreements, the burden falls on the lawyer to express the terms of
the payment of the fee. 

 According to the agreement printed on the law firm letterhead, Baldwin sought
Garner's services to represent him in Texas to assist in retaking unidentified property and
to "potentially" (1) file a suit to set aside a foreclosure and (2) sue Baldwin's former attorney
for neglect and the maker of various notes. The July 1, 1982 fee agreement did not
address a refund of the $20,000 payment or any part thereof if Garner withdrew from
representing Baldwin. However, the agreement did provide that if Baldwin desired to
terminate Garner's services at any time, counsel would return the $20,000 less amounts
advanced for payment of costs, expenses, and fees earned at $125 per hour, upon
request. Because the agreement did not provide the request for a refund could not be
implied, and was silent as to an accounting for repayment if Garner withdrew from
representation, applying the principles announced in Archer and Levine, I conclude the trial
court erred in construing that the $20,000 payment was not refundable, in whole or in part. 



 Don H. Reavis

 Justice


 

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2005).
2. We label Baldwin's contentions as "arguments" because he does not separately brief each of the nine
issues. Rather, he combines several issues in each of his arguments. Thus, it is easier to address his
contentions as arguments instead of issues or points of error. 
3. To the extent that Garner was to receive 20% of the recovered damages exceeding $100,000 and
$20,000 is 20% of $100,000, it can reasonably be said that Garner contemplated a 20% across the board
contingent fee arrangement. However, the first 20% was to be paid in advance. 
4. No one argues that the phrase is ambiguous. 
5. We also reject Baldwin's contention that the opinion in Levine v. Bayne, Snell & Krause, Ltd., 40
S.W.3d 92 (Tex. 2001) controls the outcome. Though Levine also dealt with the question of how to calculate
an attorney's fee, the circumstances before the Supreme Court differed from those before us. Unlike the court
in Levine, we do not have to decide what the client "received," for purposes of calculating the fee, when two
opposing claims were offset against each other in the same judgment. 
6. So too must it be noted that the authorities cited by Baldwin to support his argument dealt with the
rights of a creditor viz-a-viz a debtor. Garner was not Baldwin's debtor. Thus, it did not matter that a creditor
could allocate, against a debtor, whatever payments he received first to the interest and then to principle. 
7. Though the court in Formosa Plastics ultimately held that damages for fraud in the inducement were
recoverable despite the existence of a contract, the circumstances there are distinguishable from those here.
When the misrepresentations were uttered in Formosa there was no contract since the misrepresentations
themselves induced the subsequent accord. Here, the retainer agreement establishing the rights and liabilities
of those involved pre-existed the misrepresentations relating to the contract and its performance. Thus, it is
quite understandable why tort recovery was permitted in Formosa; simply put, there could have been no
contention that the duties emanated from anything other than general principles of law since there was no
contract when the misrepresentations were made.
8. Under that segment of his live petition dealing with deceptive trade practices, Baldwin incorporated
all other acts of Garner previously mentioned in the pleading and which he considered objectionable. Thus,
the supposedly deceptive acts committed by Garner were not simply those expressly mentioned under the
topic "Defendants' Violation of the Deceptive Trade Practices Act."
9. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann.
§ 75.002(a)(1) (Vernon Supp. 2005).