In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00101-CR


______________________________




LAKESHA ANN WILLIAMS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 06-0383X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 A jury found Lakesha Ann Williams not guilty of possession of cocaine with intent to
distribute, but instead found her guilty of possession of four grams or more of cocaine. The jury
assessed Williams' punishment at thirteen years' imprisonment. In her sole point of error, Williams
contends the evidence is legally insufficient to show she intentionally or knowingly possessed the
cocaine found by police in her rental car. For the reasons set forth below, we overrule this issue and
affirm the judgment.

 To review the legal sufficiency of the evidence, we must examine the evidence adduced at
trial in the light most favorable to the jury's verdict and determine whether any rational trier of fact
could have found the essential elements of the alleged crime to have been proven beyond a
reasonable  doubt.  Jackson  v.  Virginia,  443  U.S.  307,  319  (1979);  Johnson  v.  State,  23
S.W.3d 1, 7 (Tex. Crim. App. 2000); Ingram v. State, 213 S.W.3d 515, 518 (Tex. App.--Texarkana
2007, no pet.). To support a conviction for possession of cocaine, the evidence must show (1) that
the accused exercised actual custody, care, management, or control over the cocaine and (2) that the
accused also knew the matter being "possessed" was contraband. Washington v. State, 215 S.W.3d
551, 554 (Tex. App.--Texarkana 2007, no pet.); Rice v. State, 195 S.W.3d 876, 879 (Tex.
App.--Dallas 2006, pet. ref'd). "There is no set formula of facts that dictate a finding of sufficient
links to support an inference of knowing possession of contraband." Washington, 215 S.W.3d at 554
(citing Porter v. State, 873 S.W.2d 729, 732 (Tex. App.--Dallas 1994, pet. ref'd)).

 Nonetheless, recognized factors include whether: (1) the contraband was in
plain view or recovered from an enclosed place; (2) the accused was the owner of the
premises or the place where the contraband was found; (3) the accused was found
with a large amount of cash; (4) the contraband was conveniently accessible to the
accused; (5) the contraband was found in close proximity to the accused; (6) a strong
residual odor of the contraband was present; (7) the accused possessed other
contraband when arrested; (8) paraphernalia to use the contraband was in view, or
found on the accused; (9) the physical condition of the accused indicated recent
consumption of the contraband in question; (10) conduct by the accused indicated a
consciousness of guilt; (11) the accused attempted to flee; (12) the accused made
furtive gestures; (13) the accused had a special connection to the contraband; (14) the
occupants  of  the  premises  gave  conflicting  statements  about  relevant  matters;
(15) the accused made incriminating statements connecting himself or herself to the
contraband; (16) the quantity of the contraband; and (17) the accused was observed
in a suspicious area under suspicious circumstances. 


Id. (referencing Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex. App.--Corpus Christi 2002, no
pet.); Kyte v. State, 944 S.W.2d 29, 31-32 (Tex. App.--Texarkana 1997, no pet.)). The question of
whether there are sufficient links between the drugs and the accused is an issue that must be resolved
on a case-by-case basis. In re J.M.C.D., 190 S.W.3d 779, 781 (Tex. App.--El Paso 2006, no pet.);
Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet. ref'd). Ultimately, it is the
logical force these factors have in establishing the elements of the offense, rather than the mere
quantity of these factors, that is key. Evans v. State, 202 S.W.3d 158, 161-62 (Tex. Crim. App.
2006); Washington, 215 S.W.3d at 554-55.

 Mark Kiser, a reserve deputy with the Harrison County Sheriff's Department, testified that
he stopped a small passenger car with Mississippi license plates for speeding February 3, 2006. That
car was being driven by Williams, who was the vehicle's sole occupant. The traffic stop occurred
on Interstate 20, near mile marker 603, in Harrison County, Texas. Kiser testified that Interstate 20
constitutes "a major drug corridor" in the United States. 

 Continuing his testimony, Kiser informed the jury that Williams appeared unusually nervous
when he approached her vehicle. In fact, before he could inform her of the basis of the traffic stop,
Kiser interrupted the officer and admitted she had been speeding--a reaction that Kiser characterized
as "strange." Williams later provided the officer with her driver's license and a copy of the vehicle's
rental agreement. When Kiser asked Williams about the purpose of her visit to Texas, she answered
that she had traveled from Mississippi to a mall in Texas to apply for employment. However,
according to the officer, Williams was unable to supply the name of the mall she had visited. 
Williams also told the officer she stayed at the mall for less than an hour while she applied for
employment at three or four stores--a time frame that the officer believed would be far too short a
period in which to apply for employment at so many different locations. In all, Williams' various
statements to the officer raised Kiser's suspicions. These suspicions were later heightened when
Kiser learned that Williams had only arrived in Texas earlier that same day from Mississippi and that
she was already headed back home; Kiser testified that it was not uncommon for persons who
traveled for long distances, stayed at their destinations only a short period of time, and then returned
home quickly (traversing the same long distance) to be drug couriers. 

 Kiser became even more suspicious after noticing that the vehicle had not been rented to
Williams, yet Williams was the sole occupant of the vehicle. Williams would later be unable to
provide Kiser with the last name of the person who had rented the vehicle--though the name was
identifiable on the rental slip Williams had earlier given Kiser during the initial portion of the traffic
stop. 

 Kiser then began asking Williams whether she was carrying any illegal drugs in her rental
vehicle. Kiser specifically asked her about several named drugs. According to Kiser, Williams
calmly denied being in possession of any named drugs, with the exception of one: cocaine. When
Kiser specifically asked Williams whether she was carrying any cocaine in her vehicle, "Williams
kind of laughed and said no." This particular response was unusual in comparison to the others, and
it further raised Kiser's suspicions that Williams might be involved in narcotics trafficking. 

 Kiser subsequently requested, and received from Williams, permission to search the rental
vehicle. During this consensual search, Kiser instructed Williams to stand away from the rental
vehicle and next to the officer's patrol vehicle. Williams remained where she had been instructed
to stand while Kiser searched the interior of the rental car. However, when Kiser approached the
trunk of the rental vehicle, Williams moved away from the police car and began walking toward the
rental car that Kiser was still searching. Kiser had to again instruct Williams to step back toward
his patrol vehicle. Kiser then opened the trunk, found several suitcases, and began examining the
contents of the suitcases. Kiser ultimately found women's clothing, a loaded 9-millimeter Smith and
Wesson handgun, and cocaine inside one of the suitcases. Williams was then placed under arrest. 
The cocaine was subsequently determined to weigh between three and four pounds. 

 At trial, Kiser was unable to remember the exact amount of cash Williams had in her
possession at the time of her arrest; he only remembered that Williams had "a very little amount." 
The deputy also testified Williams had no other narcotics, contraband, or drug paraphernalia in her
immediate possession at the time of her arrest. He also testified that the street value of the cocaine
found in the rental car was around $150,000.00. According to Kiser, drug "mules" are persons hired
by regional drug distributors to transport quantities of illegal narcotics around the country and are
often provided with rental vehicles and firearms. These persons are generally "people with very little
criminal history or criminal background, just average people who don't stand out, someone who you
might look at under other circumstances and not think anything else about them." Kiser opined that,
in this case, he believed that Williams knew she was transporting the narcotics at the time she was
stopped (even though she had no criminal history and had very little cash in her possession) based
on his evaluation of Williams' mannerisms and vocal responses given during the traffic stop. 
However, Kiser conceded on cross-examination that it might be possible that drug "mules" can be
tricked into transporting drugs across the country without having actual knowledge that they are
transporting illegal contraband. 

 After reviewing Deputy Kiser's testimony, we believe that a rational trier of fact in this case
could have concluded the evidence provided sufficient links to show Williams had actual knowledge
there was cocaine in the trunk of the rental vehicle. Kiser testified Williams appeared unusually
nervous at the outset of the traffic stop. Williams showed unique nervousness when he questioned
her about whether she specifically had cocaine in her car, whereas she had shown only a casual
response to questioning about other specific types of narcotics. Kiser believed that Williams' story
about traveling to Texas for the purpose of applying for jobs at a mall was incredible, especially
when Williams could not name the mall to which she had gone. A rational jury could use its
collective common sense to reach a similar conclusion. Williams was driving a rental vehicle (a
common practice among drug couriers), but she could not provide the officer with the last name of
the person who had rented the car for her, even though the rental agreement clearly gave that person's
name--a factor suggesting she was unfamiliar with the person who had rented the vehicle on her
behalf (and thereby suggesting a tenuous, nonfamily connection between Williams and the person
renting the vehicle). Williams also had exclusive possession and control of the car and its contents. 
Then there was the officer's testimony about how Williams had started to walk toward the vehicle
during the search once the officer began moving toward the trunk area to continue his search, a factor
the officer interpreted as being a sign that she knew he might find contraband in the trunk. Finally,
and most significantly, the deputy testified he found women's clothing inside the suitcase containing
the drugs. 

 Given all this evidence, we believe that a rational jury could have concluded Williams'
possession of the cocaine in this case was not merely fortuitous, but knowing and intentional. Cf.
Rice, 195 S.W.3d at 880-81. The jury's verdict is supported by legally sufficient evidence. 



 In our review of the record, we note that the judgment states the statute for the offense of
which Williams was convicted is Tex. Health & Safety Code Ann. § 481.112 (Vernon 2003)
(manufacture or delivery of a controlled substance). The correct statute under which Williams was
convicted is Tex. Health & Safety Code Ann. § 481.115 (Vernon 2003) (possession of a
controlled substance). 

 This Court has the authority to reform the judgment to make the record speak the truth when
the matter has been called to our attention by any source. French v. State, 830 S.W.2d 607, 609
(Tex. Crim. App. 1992). In Asberry v. State, 813 S.W.2d 526, 529-30 (Tex. App.--Dallas 1991,
pet. ref'd), the court noted that the authority of the appellate court to reform incorrect judgments is
not dependent on request of any party; the appellate court may act sua sponte. The Texas Rules of
Appellate Procedure provide direct authority for this Court to modify the judgment of the trial court. 
Tex. R. App. P. 43.2.

 Therefore, we reform the judgment of the trial court to reflect Tex. Health & Safety Code
Ann. § 481.115 as the statute under which Williams was convicted. 


 We overrule Williams' sole point of error and, as reformed, affirm the trial court's judgment.


 Jack Carter

 Justice



Date Submitted: March 19, 2008

Date Decided: March 20, 2008


Do Not Publish