

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00101-CR
_____

LAKESHA ANN WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 06-0383X

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

A jury found Lakesha Ann Williams not guilty of possession of cocaine with intent to distribute, but instead found her guilty of possession of four grams or more of cocaine. The jury assessed Williams' punishment at thirteen years' imprisonment. In her sole point of error, Williams contends the evidence is legally insufficient to show she intentionally or knowingly possessed the cocaine found by police in her rental car. For the reasons set forth below, we overrule this issue and affirm the judgment.

To review the legal sufficiency of the evidence, we must examine the evidence adduced at trial in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the alleged crime to have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Ingram v. State*, 213 S.W.3d 515, 518 (Tex. App.—Texarkana 2007, no pet.). To support a conviction for possession of cocaine, the evidence must show (1) that the accused exercised actual custody, care, management, or control over the cocaine and (2) that the accused also knew the matter being "possessed" was contraband. *Washington v. State*, 215 S.W.3d 551, 554 (Tex. App.—Texarkana 2007, no pet.); *Rice v. State*, 195 S.W.3d 876, 879 (Tex. App.—Dallas 2006, pet. ref'd). "There is no set formula of facts that dictate a finding of sufficient links to support an inference of knowing possession of contraband." *Washington*, 215 S.W.3d at 554 (citing *Porter v. State*, 873 S.W.2d 729, 732 (Tex. App.—Dallas 1994, pet. ref'd)).

Nonetheless, recognized factors include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances.

*Id.* (referencing *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31–32 (Tex. App.—Texarkana 1997, no pet.)). The question of whether there are sufficient links between the drugs and the accused is an issue that must be resolved on a case-by-case basis. *In re J.M.C.D.*, 190 S.W.3d 779, 781 (Tex. App.—El Paso 2006, no pet.); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd). Ultimately, it is the logical force these factors have in establishing the elements of the offense, rather than the mere quantity of these factors, that is key. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); *Washington*, 215 S.W.3d at 554–55.

Mark Kiser, a reserve deputy with the Harrison County Sheriff's Department, testified that he stopped a small passenger car with Mississippi license plates for speeding February 3, 2006. That car was being driven by Williams, who was the vehicle's sole occupant. The traffic stop occurred

3

on Interstate 20, near mile marker 603, in Harrison County, Texas. Kiser testified that Interstate 20 constitutes "a major drug corridor" in the United States.

Continuing his testimony, Kiser informed the jury that Williams appeared unusually nervous when he approached her vehicle. In fact, before he could inform her of the basis of the traffic stop, Kiser interrupted the officer and admitted she had been speeding—a reaction that Kiser characterized as "strange." Williams later provided the officer with her driver's license and a copy of the vehicle's rental agreement. When Kiser asked Williams about the purpose of her visit to Texas, she answered that she had traveled from Mississippi to a mall in Texas to apply for employment. However, according to the officer, Williams was unable to supply the name of the mall she had visited. Williams also told the officer she stayed at the mall for less than an hour while she applied for employment at three or four stores—a time frame that the officer believed would be far too short a period in which to apply for employment at so many different locations. In all, Williams' various statements to the officer raised Kiser's suspicions. These suspicions were later heightened when Kiser learned that Williams had only arrived in Texas earlier that same day from Mississippi and that she was already headed back home; Kiser testified that it was not uncommon for persons who traveled for long distances, stayed at their destinations only a short period of time, and then returned home quickly (traversing the same long distance) to be drug couriers.

Kiser became even more suspicious after noticing that the vehicle had not been rented to Williams, yet Williams was the sole occupant of the vehicle. Williams would later be unable to

4

provide Kiser with the last name of the person who had rented the vehicle—though the name was identifiable on the rental slip Williams had earlier given Kiser during the initial portion of the traffic stop.

Kiser then began asking Williams whether she was carrying any illegal drugs in her rental vehicle. Kiser specifically asked her about several named drugs. According to Kiser, Williams calmly denied being in possession of any named drugs, with the exception of one: cocaine. When Kiser specifically asked Williams whether she was carrying any cocaine in her vehicle, "Williams kind of laughed and said no." This particular response was unusual in comparison to the others, and it further raised Kiser's suspicions that Williams might be involved in narcotics trafficking.

Kiser subsequently requested, and received from Williams, permission to search the rental vehicle. During this consensual search, Kiser instructed Williams to stand away from the rental vehicle and next to the officer's patrol vehicle. Williams remained where she had been instructed to stand while Kiser searched the interior of the rental car. However, when Kiser approached the trunk of the rental vehicle, Williams moved away from the police car and began walking toward the rental car that Kiser was still searching. Kiser had to again instruct Williams to step back toward his patrol vehicle. Kiser then opened the trunk, found several suitcases, and began examining the contents of the suitcases. Kiser ultimately found women's clothing, a loaded 9-millimeter Smith and Wesson handgun, and cocaine inside one of the suitcases. Williams was then placed under arrest. The cocaine was subsequently determined to weigh between three and four pounds.

At trial, Kiser was unable to remember the exact amount of cash Williams had in her possession at the time of her arrest; he only remembered that Williams had "a very little amount." The deputy also testified Williams had no other narcotics, contraband, or drug paraphernalia in her immediate possession at the time of her arrest. He also testified that the street value of the cocaine found in the rental car was around $150,000.00. According to Kiser, drug "mules" are persons hired by regional drug distributors to transport quantities of illegal narcotics around the country and are often provided with rental vehicles and firearms. These persons are generally "people with very little criminal history or criminal background, just average people who don't stand out, someone who you might look at under other circumstances and not think anything else about them." Kiser opined that, in this case, he believed that Williams knew she was transporting the narcotics at the time she was stopped (even though she had no criminal history and had very little cash in her possession) based on his evaluation of Williams' mannerisms and vocal responses given during the traffic stop. However, Kiser conceded on cross-examination that it might be possible that drug "mules" can be tricked into transporting drugs across the country without having actual knowledge that they are transporting illegal contraband.

After reviewing Deputy Kiser's testimony, we believe that a rational trier of fact in this case could have concluded the evidence provided sufficient links to show Williams had actual knowledge there was cocaine in the trunk of the rental vehicle. Kiser testified Williams appeared unusually nervous at the outset of the traffic stop. Williams showed unique nervousness when he questioned

6

her about whether she specifically had cocaine in her car, whereas she had shown only a casual response to questioning about other specific types of narcotics. Kiser believed that Williams' story about traveling to Texas for the purpose of applying for jobs at a mall was incredible, especially when Williams could not name the mall to which she had gone. A rational jury could use its collective common sense to reach a similar conclusion. Williams was driving a rental vehicle (a common practice among drug couriers), but she could not provide the officer with the last name of the person who had rented the car for her, even though the rental agreement clearly gave that person's name—a factor suggesting she was unfamiliar with the person who had rented the vehicle on her behalf (and thereby suggesting a tenuous, nonfamily connection between Williams and the person renting the vehicle). Williams also had exclusive possession and control of the car and its contents. Then there was the officer's testimony about how Williams had started to walk toward the vehicle during the search once the officer began moving toward the trunk area to continue his search, a factor the officer interpreted as being a sign that she knew he might find contraband in the trunk. Finally, and most significantly, the deputy testified he found women's clothing inside the suitcase containing the drugs.

Given all this evidence, we believe that a rational jury could have concluded Williams' possession of the cocaine in this case was not merely fortuitous, but knowing and intentional. *Cf. Rice*, 195 S.W.3d at 880–81. The jury's verdict is supported by legally sufficient evidence.

7

In our review of the record, we note that the judgment states the statute for the offense of which Williams was convicted is TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003) (manufacture or delivery of a controlled substance). The correct statute under which Williams was convicted is TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 2003) (possession of a controlled substance).

This Court has the authority to reform the judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). In *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd), the court noted that the authority of the appellate court to reform incorrect judgments is not dependent on request of any party; the appellate court may act sua sponte. The Texas Rules of Appellate Procedure provide direct authority for this Court to modify the judgment of the trial court. TEX. R. APP. P. 43.2.

Therefore, we reform the judgment of the trial court to reflect TEX. HEALTH & SAFETY CODE ANN. § 481.115 as the statute under which Williams was convicted.

We overrule Williams' sole point of error and, as reformed, affirm the trial court's judgment.


                                        Jack Carter
                                        Justice


Date Submitted:      March 19, 2008
Date Decided:        March 20, 2008

Do Not Publish