NO. 07-06-0465-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JANUARY 4, 2008

______________________________

JUAN DE LA CRUZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 88-407,845; HONORABLE CECIL G. PURYEAR, JUDGE

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

This is an out-of-time appeal conducted at the direction of the Texas Court of Criminal Appeals.  In 1990, Appellant, Juan De La Cruz, was convicted by a jury of aggravated sexual assault and punishment was assessed by the trial court at thirty years confinement.  Presenting a sole issue, Appellant contends the evidence presented during the guilt-innocence phase of the trial was factually insufficient.  We affirm.

Background

According to the victim, who is Appellant’s stepdaughter, she was sexually assaulted by Appellant on Saturday, February 20, 1988.  She was eleven years old at the time.  She testified that while she and her eight-year-old sister were watching television in the living room and her mother was at work and other siblings were not in the house, Appellant called her to his bedroom, closed the door, and placed a chair under the doorknob.  He then asked her to undress, which she refused to do.  Appellant then pulled her pants and panties down around her knees and instructed her to lay down on the bed.  He pulled his pants and underwear down to his knees and according to the victim, he held his “private part” and rubbed it against her private part.  The victim testified that following the incident, Appellant cleaned her and himself and she dressed herself and returned to the living room. 

The following Thursday, the victim intended to run away from home but told her sister she would be staying after school for tutoring.  She encountered her friend Tabitha, whom she was not supposed to associate with, and confided in her about the assault.  The two headed to Tabitha’s grandfather’s house and on the way, were spotted by the victim’s older brother.  Fearing that her brother would tell she was with Tabitha, she ran inside Tabitha’s grandfather’s house, and Tabitha called the police to report the incident with Appellant. 

Meanwhile, a missing child report had been issued on the victim, and Officer Dusty Staggs tracked her down at a different residence than Tabitha’s grandfather’s.  He took her into protective custody and called for assistance from a female officer, Patsy Curry, to interview her.  He also called Child Protective Services.  Officer Curry testified that the victim had been crying and was upset.  After they worked out common definitions to describe body parts, the victim finally told Officer Curry that Appellant “had went inside her.”  Appellant and her sister were removed from their home by Child Protective Services and placed in foster care.  

CPS referred the victim to Dr. Jennie Patrick, a pediatrician, for a sexual assault exam on March 1, 1988.  In addition to a full exam of the victim, Dr. Patrick also interviewed the victim.  According to her testimony, the results of the exam were inconclusive for full penetration of the female sexual organ; however, the victim had inflammation of the vestibule of the female sexual organ.  

In a two-count indictment, Appellant was charged in 1990 with aggravated sexual assault by contact and penetration.  At trial, however, the State elected to proceed only on the sexual contact allegation.  As relevant to the allegations in the underlying case, the law in effect at the time Appellant was charged in 1988 was substantially the same as the current version.
(footnote: 1)
 Factual Sufficiency Standard of Review

Appellant contends the evidence presented during the guilt-innocence phase of the trial was factually insufficient
.  The Texas Court of Criminal Appeals has adjusted a direct appellate court’s power to review factual sufficiency of the evidence in line with civil practice.  
Marshall v. State
, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006), 
cert. denied
, __ U.S. __, 128 S.Ct. 87, __ L.Ed.2d __ (2007), citing 
Watson v. State
, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006)
.  When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the jury
 
was rationally justified in finding guilt beyond a reasonable doubt.  
Zuniga v. State
, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), 
overruled in part by
 
Watson
, 204 S.W.3d at 415-17.  Evidence can be factually insufficient in two ways: (1) the verdict seems clearly wrong or manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence.  
Marshall
, 210 S.W.3d at 625.  A factual sufficiency review permits the reviewing court to substitute its judgment for a jury’s on questions of credibility and weight determinations, “albeit to a very limited degree.”  
Id.
, citing 
Watson
, 204 S.W.3d at 417.  Nevertheless, we cannot reverse a conviction unless we find some objective basis in the record that demonstrates that the great weight and preponderance of the evidence contradicts the jury’s verdict or that an appellant’s conviction is “clearly wrong or manifestly unjust.”  
Watson
, 204 S.W.3d at 417. 

Additionally, 
as directed by the Texas Court of Criminal Appeals, we must consider the most important evidence that an appellant claims undermines the jury’s verdict.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). 
 
Cognizant that we are to consider all evidence in a neutral light in conducting a factual sufficiency review, we are not, however, required to discuss all evidence admitted at trial.  
See id.  See also Roberts v. State
, 221 S.W.3d 659, 665 (Tex.Crim.App. 2007).

The
 
jury is the exclusive judge of the facts.  Tex. Code Crim. Proc. Ann. art. 36.13 & 38.04 (Vernon 2007).  As a reviewing court, we must always remain cognizant of the jury’s role and unique position in evaluating credibility and demeanor of witnesses and giving weight to contradictory testimonial evidence.  
Johnson v. State
, 23 S.W.3d 1, 8-9 (Tex.Crim.App. 2000).  Reconciliation of conflicts in the evidence is within the exclusive province of the jury.  
Margraves v. State
, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). 
Unless the record clearly demonstrates a different result is appropriate, we must defer to the jury’s determination.  
Johnson
, 23 S.W.3d
 at 8.  

Analysis

In support of his factual insufficiency contention, Appellant maintains that the evidence is too weak to support guilt beyond a reasonable doubt.  He also asserts there were inconsistencies in the victim’s and her sister’s testimony and challenges the victim’s credibility on whether she was fully penetrated because she later retracted her story after her examinations revealed no physical evidence of injury.  

Inconsistencies in Testimony

The inconsistencies in the victim’s and her sister’s testimony that Appellant complains of are (1) his instructions to the victim’s sister to look out the window after he called the victim to his bedroom and (2) what the sister heard after the bedroom door closed.  The victim testified that Appellant instructed her sister to look out the window and watch for their mother while they were in the bedroom.  Her sister testified that Appellant instructed her to look out the window for “anybody” and “shout and tell him” if anyone approached.  The victim also testified that after Appellant closed the bedroom door, he pushed a chair underneath the doorknob.  Her sister testified that she heard the “doorknob [sic] close” and nothing else.

The inconsistencies Appellant complains of are subtle; the gist of his instructions to the victim’s sister, regardless of whether the jury believed the victim or her sister, was for the victim’s sister to act as a lookout while he and the victim were in the bedroom.  Inconsistencies in testimony are for the jury to resolve and because the record here does not reflect that a different result is appropriate, we must defer to the jury’s determination.

Degrees of Penetration

Dr. Patrick testified that the victim’s exam was normal except for inflammation of the lining of the vestibule, which could have resulted from
 poor hygiene or partial penetration.  
During cross-examination, she testified that when she first questioned the victim, she said that Appellant had put his penis “inside” her and moved it up and down.  During redirect examination, Dr. Patrick explained that she and the victim did not discuss the different areas of the female sexual organ that could be penetrated.  Her  report provided that the victim indicated that Appellant had “bumped his penis up against her.”
  She determined that although the physical evidence was inconclusive for full penetration, it was possible for her findings to be consistent with the victim’s story–that Appellant partially penetrated her at least through the vestibule of the female sexual organ.  Additionally, she testified that given the number of days between the incident and the initial exam–February 20 to March 1–physical injuries, if any, would have probably healed. 

On March 9, 1988, the victim was examined by Dr. Rafael Garcia, a pediatrician specializing in child abuse, neglect, and sexual abuse cases.  He testified that the victim
 never indicated full vaginal penetration and reported that Appellant had pushed his penis against her vagina.  With the use of generic slides, Dr. Garcia testified about the different parts of the female sexual organ and explained that a child could be easily confused on the different degrees of penetration.  The results of his exam of the victim, a prepubescent girl, revealed that her hymen had extra tissue known as “redundant folds.”  Although he agreed with Dr. Patrick that there was no physical evidence of forceful penetration, the lack of findings did not necessarily contradict the victim’s allegations.  Partial penetration without physical injury was possible.  In response to questioning, Dr. Garcia testified that he believed the victim’s story.

Appellant maintains that the victim changed her story from penetration to partial penetration of the “folds” of her sexual organ after realizing that the medical exams revealed no physical evidence of injury.  We disagree.  

The evidence indicates that the victim was unfamiliar with the male and female sexual organs.  In fact, she used anatomically correct dolls during her testimony.  She testified that when questioned by Officer Curry, she told her that Appellant had “went inside her,” because she didn’t know otherwise.  During trial, she testified that Appellant put his private part “between the folds,” and explained that she first heard the term “folds” from Officer Curry. 

During cross-examination, Officer Curry was asked why her report reflected that Appellant had “penetrated” the victim.  She explained that she understood the victim to mean penetration when she reported that Appellant “had went inside her.”  She also testified that she and the victim did not discuss what “inside” or penetration meant.

The defense strategy was that the victim had fabricated the allegations because she knew she would get in trouble for associating with Tabitha.  Appellant argues that he brought out facts contrary to the verdict during the victim’s cross-examination.  Specifically, he points to evidence that the victim was not upset at the time of the incident but was crying and upset when found by Officer Staggs five days later.

Officer Staggs testified that when he found the victim, she was crying and upset and did not want to go home.  The victim testified that she was relieved when police arrived.  According to the victim, Appellant had threatened to hurt her if she disclosed what had happened.  She also testified that she was aware that if she recanted her allegations, she could leave foster care and live with her mother.  She was not willing to do so and added that she did not want to live with her mother if Appellant was there.  The victim’s sister likewise testified that she preferred to live with her mother, but not if Appellant was living with them. 

Conclusion

Viewing all the evidence in a neutral light, we find no objective basis in the record that demonstrates that the great weight and preponderance of the evidence contradicts the jury’s verdict or that Appellant’s conviction is clearly wrong or manifestly unjust.
  We conclude the evidence is factually sufficient to support Appellant’s conviction.  His sole issue is overruled.
 
 

Accordingly, the trial court’s judgment is affirmed.

Patrick A. Pirtle

      Justice

Do not publish.

icted of possession of methamphetamine.  To prove its case, the State must show appellant exercised care, custody and control over the methamphetamine and had knowledge that the substance in her possession was contraband. 
  
Tex. Penal Code Ann. § 1.07(a) (Vernon 2003); 
Poindexter v. State,
 153 S.W.3d 402, 405 (Tex.Crim.App. 2005); 
Brown v. State,
 911 S.W.2d 744, 747 (Tex.Crim.App. 1995);
 
Lassaint v. State,
 79 S.W.3d 736, 739 (Tex.App.–Corpus Christi 2002, no pet.). 
 Possession need not be exclusive and evidence which shows that an accused jointly possessed the contraband with another is sufficient. 
  
Whitworth v. State,
 808 S.W.2d 566, 569 (Tex.App.–Austin 1991, pet. ref’d).  When an accused is not in exclusive possession and control of the place where the contraband was found, it cannot be concluded or presumed that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances connecting or linking the accused to the knowing possession of contraband.  
Poindexter,
 153 S.W.3d at 406; 
Brown,
 911 S.W.2d at 748; 
Hargrove v. State,
 211 S.W.3d 379, 385 (Tex.App.–San Antonio 2006, pet. ref’d).
  In determining the legal sufficiency of evidence in a knowing possession of contraband case, there must be evidence of circumstances, in addition to mere presence, to adequately justify the conclusion that the accused knowingly possessed the contraband.  
Evans v. State,
 202 S.W.3d 158, 162 n.9 (Tex.Crim.App. 2006); 
Washington v. State,
 215 S.W.3d 551, 554-55 (Tex.App.–Texarkana 2007, no pet.).  Presence and proximity when combined with other evidence, direct or circumstantial, may be sufficient to establish a knowing possession of contraband.  
Evans,
 202 S.W.3d at 162.

Statute provides that a conviction cannot be had on the testimony of an accomplice unless it is corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense.  Tex. Code Crim. Proc. Ann. § 38.14 (Vernon 2005); 
Dreury v. State,
 225 S.W.3d 491, 498 (Tex.Crim.App. 2007) (before conviction may rest on an accomplice witness’s testimony, it must be corroborated by “independent evidence tending to connect the accused with the crime”). 

Application

By the time of trial, Johnson had plead guilty to the offense of possession, with intent to manufacture, of an immediate precursor of methamphetamine.  The jury was instructed he was an accomplice as a matter of law
.  
See 
Tex. Code Crim. Proc. Ann. § 38.14 (Vernon 2005); 
Kutzner,
 994 S.W.2d at 187, 
citing McFarland v. State,
 928 S.W.2d 482, 514 (Tex.Crim.App. 1996) (a person is an accomplice, whose testimony must be corroborated, as a matter of law if he would be susceptible to prosecution for the offense with which the accused is charged or a lesser included offense).
 
He had not yet been sentenced when he testified for the State at appellant’s trial, and said part of his plea agreement required that he testify truthfully at her trial.  Accordingly, we first consider whether his testimony was corroborated. 

The sufficiency of corroborating evidence is tested by eliminating the accomplice witness testimony and then examining the remaining evidence to determine the existence of evidence connecting the defendant with the commission of the offense.  
Munoz v. State
, 853 S.W.2d 558, 559 (Tex.Crim.App. 1993).  It is not necessary that the remaining evidence directly link the defendant to the crime or prove all the elements of the charged offense.  
Gill v. State
, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994).  
To corroborate accomplice-witness testimony, “all the law requires is that there be s
ome
 non-accomplice evidence which 
tends
 to connect the accused to the commission of the offense.  While individually these circumstances might not be sufficient to corroborate the accomplice testimony, taken together, rational jurors could conclude that this evidence sufficiently 
tended
 to connect appellant to the offense.”  
Hernandez v. State,
 939 S.W.2d 173, 178-79 (Tex.Crim.App. 1997), 
citing Cox v. State,
 830 S.W.2d 609, 612 (Tex.Crim.App. 1992) (emphasis in original); 
Cantelon v. State,
 85 S.W.3d 457, 460-61 (Tex.App.–Austin 2002, no pet.). 
 There is no precise rule as to the amount of evidence that is required, and each case is to be considered on its own facts and circumstances.  
Munoz
, 853 S.W.2d at 559.
 
 We must view the corroborating evidence in the light most favorable to the verdict.  
Knox v. State,
 934 S.W.2d 678, 686-87 (Tex.Crim.App. 1996); 
Gill,
 873 S.W.2d at 48.
 

Johnson testified that appellant’s role in the manufacturing process was to scrape the match book covers.  The State’s brief argues Johnson’s testimony is corroborated by the presence of scraped match book covers in the trash.  But that evidence merely corroborates the commission of the offense, not appellant’s involvement.  
Appellant argues that without Johnson’s testimony the evidence shows only her presence.  While an accused person’s mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense.  
Dowthitt v. State
, 931S.W.2d 244, 249 (Tex.Crim.App. 1996), 
citing
 
Gill
, 873 S.W.2d at 49.  Here, the non-accomplice evidence
(footnote: 7) includes an officer’s testimony that appellant “co-habitated” with Johnson,
(footnote: 8) and testimony that appellant’s vehicle was parked at the mobile home during the month before their arrest.  The jury also could have inferred from police testimony that clothing folded in the laundry baskets found in the mobile home belonged to appellant.  Although there was testimony that other females sometimes stayed in the mobile home, nothing indicates any other female was then staying there.  Appellant’s purse was lying on top of the baskets, which contained both male and female clothing.    

Additionally, the odor associated with methamphetamine manufacturing was described at trial as “strong.”  Testimony indicated the odor emanated from the trash can by the home’s front porch but was present inside the home as well.  One officer testified it was “an immediately strong odor” even after the house had been ventilated and the front doors opened.  
The same officer said the odor was strong in the bedroom from which appellant walked, and indicated a person could not be in that room without smelling it.  The odor was described as “kind of acidic with a strong acid metallic smell.”           

The requirement that accomplice-witness testimony be corroborated does not present a high threshold.  
McAfee v. State,
 204 S.W.3d 868, 878-79 (Tex.App.–Corpus Christi 2006, pet. ref’d); 
Cantelon,
 85 S.W.3d at 461.  Even insignificant circumstances may satisfy the test.  
Id., Reed v. State,
 744 S.W.2d 112, 126 (Tex.Crim.App. 1988).  We find the evidence that appellant had been present with the accomplice in the mobile home during an extended period of time, coupled with the evidence of the strong odor associated with methamphetamine manufacture, tends to connect appellant with the offense of possession of methamphetamine.

Because we find Johnson’s testimony was corroborated, we now consider his testimony in determining the sufficiency of the evidence to support appellant’s conviction for possession of methamphetamine.  Taking all of the evidence together and considering Johnson’s testimony that appellant participated 
in the “cook” and used methamphetamine while at the residence, we find legally sufficient evidence from which a jury could reasonably infer appellant 
controlled, and thus knowingly possessed, the methamphetamine for which she was charged.  
See Stubblefield v. State,
 79 S.W.3d 171, 177 (Tex.App.–Texarkana 2002, pet. ref’d) (Grant, J. concurring in part and dissenting in part).  Viewing the evidence in the proper light, we find a 
rational trier of fact could have found the essential elements of possession of methamphetamine beyond a reasonable doubt
.

Turning to appellant’s factual sufficiency challenge, appellant is correct that, outside Johnson’s testimony, little evidence beyond the corroborating evidence we have noted connects her with the methamphetamine.  Nothing indicates that appellant had drugs on her person or residue on her clothes, or that she appeared to be under the influence of methamphetamine at the time of her arrest.  Many of the items associated with methamphetamine manufacture were found in the trash or in locations in the mobile home other than the bedroom in which she was sleeping.  The black bags were in the closet, one of them under a blanket.  One officer answered negatively to the prosecutor’s question  whether a photograph of the room where appellant was found sleeping depicted anything that may be associated with a methamphetamine lab.
(footnote: 9)  But the jury was free to believe Johnson’s testimony that the methamphetamine was his and appellant helped with its manufacture. 
 We do not find the evidence to be so weak that the jury’s verdict seems clearly wrong and manifestly unjust, or that the evidence contrary to the verdict is such that the jury’s verdict is against the great weight and preponderance of the evidence.  We overrule appellant’s issues and affirm the judgment of the trial court.

James T. Campbell

         Justice

Do not publish.

FOOTNOTES
1:
See 
Act of May 29, 1987, 70th Leg., R.S., ch. 1029, § 1, 1987 Tex. Gen. Laws 3474 (current version at Tex. Penal Code Ann. § 22.011(a) (Vernon Supp.2007)).

7:
8:
9: